Ross, J.
On the thirteenth day of October, 1879, the plaintiff, being engaged in the business of selling water for mining and other useful purposes, and the defendant, being the owner of a certain mine and quartz-mill, entered into an agreement in writing, by which the *615 plaintiff agreed and bound itself to furnish the defendant certain water, which the defendant agreed and bound himself to take and use in running the mill. Among other provisions, the agreement contained the following:—
“ It is further understood that the said party of the second part [defendant] may make any alteration in the driving power of his mill, and may put up amalgamators, concentrators, or arastras and machinery at and near his mill without any further or extra charge for the water, but shall not put up another mill and use the same water again for a separate driving power.
“And the said A. Chavanne, the party hereto of the second party, agrees to pay to said party of the first part the sum of one hundred dollars per month for the use of said water, payable quarterly.
“It is further understood that should said party of the second part erect another mill and use the same water to run said other mill, he shall pay to said party of the first part fifty dollars ($50) per month additional, but no extra charge for water shall be made for putting up more stamps in the present mill. This agreement is to continue and be in force between the parties and their successors, administrators, representatives, and assigns for the term of ten years from this date, for which term the same shall be binding upon the parties to this agreement and their successors in interest as aforesaid.
“ It is further understood that if the party of the second part should sell his mines, his successors in interest in the mines shall be bound by this agreement.”
A subsequent addition was made to the agreement, which does not affect the question to be decided.
The parties to the contract at once entered upon its performance, and each duly complied with its requirements until the defendant, on the 14th of May, 1880, sold and conveyed his mill and mining property mentioned in the agreement to a corporation called the Amelia *616 Gold Mining Company, from and after which time, and until the first day of October, 1881, the plaintiff furnished the water mentioned in the agreement for the use of and which was used by the Amelia Gold Mining Company in the operation of the mill and mine aforesaid. The findings show that from the time of the defendant's sale to the date last mentioned defendant was the agent of the Amelia Gold Mining Company, and that “ by and in accordance with his instructions, the plaintiff made out the bills for water furnished as aforesaid against the said Amelia Gold Mining Company, and receipts were given therefor in the name of the plaintiff to the Amelia Gold Mining Company, defendant Chavanne paying the same by his check drawn upon the Swiss Bank in San Francisco. That on the first day of October, 1881, the said defendant Chavanne ceased to have any interest or connection with the Amelia Gold Mining Company, or with the mines, mill, and premises in said agreement mentioned, and on said date notified J. F. Treat, the president of the plaintiff corporation, that he had sold all of his interest in said property to the Amelia Gold Mining Company.”
The plaintiff subsequently continued to furnish the water for use of the mill, and seeks' by this action to charge the defendant Chavanne with the amount per month stipulated in the agreement of October 13, 1879. The whole question therefore turns on the true construction of that contract; the plaintiff insisting that defendant thereby made himself personally responsible at the price fixed for the water plaintiff agreed to furnish during the whole period of ten years. We do not think that the true meaning of the agreement. The price to be paid was for the use of the water; and as the latter was to be used in running the mill, and as the right of the defendant to sell the mill as well as the mine was expressly recognized in the agreement, it would seem to follow necessarily that it was not contemplated that de *617 fendant should pay the price after he should sell the mill. That conclusion is greatly strengthened by the provision of the agreement attempting to bind the successors in interest of defendant to take and use the water in running the mill, and to pay for its use at the price mentioned in the agreement during the term therein specified. It is further strengthened by the construction the parties themselves put upon the agreement by the furnishing by plaintiff of the water to the Amelia Gold Mining Company, and the receipt from the latter of pay for its use in accordance with the terms of the agreement. Whether or not the agreement is binding upon the Amelia company is a question that does not arise in this case.
Judgment affirmed.
McKinstry, J., and Myrick, J., concurred.