[Civ. No. 3046. First Appellate District, Division One.—December 23, 1919.]

CALIFORNIA PACKING CORPORATION (a Corporation), Plaintiff, Appellant and Respondent, v. CHARLES EMIRZIAN, Defendant, Respondent and Appellant.

[1] CONTRACTS — AGREEMENT FOR SALE OF CROPS — ASSUMPTION BY VENDEE — EVIDENCE — FINDING.—In this action for damages for failure to deliver a crop of fruit, the agreement between the defendant and his vendor and the evidence as to the manner in which the crop was handled during the first year the defendant was in possession showed that he did not assume to carry out the contract entered into between his vendor and plaintiff's assignor.

[2] ID.—NOVATION—MEETING OF MINDS.—To establish a novation the plaintiff must show a meeting of the minds effecting a substitution of the new party for the original party to the contract.

[3] ID.—SALE OF CROP BY VENDEE—ACCEPTANCE OF AMOUNT PAID—EQUITABLE ASSIGNMENT.—Where the first year the defendant was in possession he delivered the crop of fruit grown to plaintiff's assignor under a contract entered into with an agent of such assignor who agreed to pay him a higher price for the fruit than

was called for by the contract entered into with his vendor, but he was only paid at the rate provided in such contract, his failure to sue for the difference did not constitute a voluntary acceptance of the benefits of the contract entered into by his vendor such as is necessary to support an equitable assignment.

APPEALS from a judgment of the Superior Court of Fresno County, and from an order granting a motion for a new trial. H. Z. Austin, Judge. Judgment affirmed; order granting new trial reversed.

The facts are stated in the opinion of the court.

Short & Sutherland for Plaintiff.

L. L. Cory for Defendant.

BEASLY, P. J., *pro tem.*—On April 9, 1913, Pettit & Wilson, a copartnership, contracted in writing to sell and deliver to Griffin & Skelley Company the crops of peaches to be grown during the seasons of 1913 to 1917, inclusive, upon certain lands owned by the partnership. In 1916, Pettit & Wilson entered into an executory agreement for the sale of the land to the defendant, pursuant to which defendant has ever since been in possession of and farming the land.

This action grows out of that transaction, and it is alleged in the complaint that the Griffin & Skelley Company assigned the above-mentioned contract to the plaintiff. The defendant delivered the fruit from the land to the plaintiff for the season of 1916, but failed and refused to deliver it · during 1917. The action is for damages for this failure to deliver the crop in that year. The defendant had judgment for his costs.

The plaintiff was granted a new trial upon the sole ground that the court had failed to find upon the issue of the assignment of the fruit contract above mentioned, from Griffin & Skelley Company to the plaintiff. Both parties appeal from the judgment. Defendant desires the order granting a new trial reviewed upon the ground that the issue as to the assignment of the contract was, in view of certain other findings of the court, immaterial. The plaintiff was not satisfied with the order granting the new trial because it

was granted upon the single ground above set forth. The questions raised by the parties are entangled, and while the appeals might, we think, be disposed of on technical grounds, we are inclined to decide all questions raised; and we are the more disposed to this course because of the manner in which the views of counsel are presented. First, then, we will consider the contentions of plaintiff. [1] The trial court found that defendant did not at any time, or at all, assume or agree to perform the contract of Pettit & Wilson with the Griffin & Skelley Company to deliver the fruit, and that the delivery of the 1916 crop was not made pursuant to the terms of that contract. The plaintiff insists that this finding is against the evidence, and conflicts with another finding which its counsel contends is inferentially at least upon the same point of fact. The other finding, with which it is asserted the foregoing finding conflicts, is briefly this: That prior to the execution of the contract for the sale by Pettit & Wilson to the defendant of the land upon which the fruit was to be produced Wilson "at defendant's request asked the manager of Griffin & Skelley Company by telephone if the company would accept the peaches grown upon said land from defendant," and that the manager stated to Wilson that he would do so. We do not think these findings necessarily conflict with each other. They may both very well be true. The conversation above set forth between Wilson and Griffin & Skelley Company's manager, although had at Emirzian's request, may have had no other purpose than to seek information. It would take something more definite than this conversation to make a binding agreement on Emirzian's part to assume and perform the contract between Pettit & Wilson and Griffin & Skelley Company, and the court's finding that Emirzian did not assume the performance of the contract to deliver the fruit was illuminated further by the testimony of Wilson and that of Emirzian himself. Wilson testified that Emirzian requested of him to call upon Rowan, Griffin & Skelley's agent, and ask him if Emirzian could deliver the peaches under the contract. Rowan, on being called and asked if he wanted the peaches, said he did. Wilson told Rowan that Wilson & Pettit were selling out and asked if he needed a new contract and Rowan said, "No; let him deliver under our contract." When this was repeated to

Emirzian, Wilson did not remember what he said, or if he made any reply at all. Emirzian testified that he knew Pettit & Wilson had a contract with Griffin & Skelley Company; that he did not know the price for the peaches provided in this contract; and that Wilson telephoned to Rowan, but he, Emirzian, did not know what Rowan said. On being afterward advised by Pettit & Wilson to sell to Griffin & Skelley Company, Emirzian testified that he said he would see Rowan; but instead he saw Goree, another agent of Griffin & Skelley Company, or whom Emirzian assumed so to be, and the latter, so Emirzian testified, agreed to give him $22.50 and $27.50 for his peaches, of which there were two varieties. Emirzian, as has been said, delivered the 1916 crop of peaches to Griffin & Skelley Company, as he supposed, under the assumption that he would be so paid, pursuant to the conversation with Goree, and when he came to settle, Griffin & Skelley Company told him he was delivering under the Pettit & Wilson contract and paid him at the rate therein provided. This was $120 short of Goree's price for the crop, and Emirzian pocketed his loss and did not sue for the difference, because he thought it was too small to be fought over. He claimed that this settlement was his first information that anyone claimed he was bound to deliver under the Pettit & Wilson contract. In 1917 he sold his peaches elsewhere. The statement of the evidence is sufficient answer to plaintiff's contention on the point of the assumption by Emirzian of the obligation of Pettit & Wilson to deliver the peaches under the contract. The court found that Emirzian did not so assume to carry out Pettit & Wilson's contract to deliver the fruit as above set forth to Griffin & Skelley Company, and the finding is sustained by this evidence.

But there is more to be said on this point. Pettit & Wilson and Emirzian were making a deal in connection with this land and the crops thereon which involved the sum of about fifty thousand dollars. The executory contract of sale was drawn, as it shows, with great care and circumspection and evidently by a thoughtful and prudent lawyer. Two other fruit contracts outstanding by which Pettit & Wilson agreed to deliver certain other fruits than the peaches were carefully mentioned in this contract. Emirzian assumed to carry out the provisions of these two other

fruit contracts by which Pettit & Wilson were bound. On the other hand, this contract with Griffin & Skelley, while Emirzian knew of its existence, was not mentioned at all in the executory contract for the sale of the land. It seems obvious from this that the parties carefully avoided binding Emirzian to the fulfillment of the Griffin & Skelley Company contract. That such an omission should be accidental is hardly to be assumed at this stage of the case, and if it was accidental, the proper remedy for the plaintiff was to have sought a reformation of the contract.

Of course, the finding that Emirzian did not assume to carry out the fruit contract between Pettit & Wilson and Griffin & Skelley is decisive of this case on the point of any contract at all on his part to deliver the fruit, for if the plaintiff must rest on an independent contract, that is, a contract independent of that existing between Pettit & Wilson and Griffin & Skelley Company, such an independent contract must be in writing, for by its terms it was not to be performed within one year, and so is obnoxious to the statute of frauds. There is no such contract here.

Nor can we from the findings and the evidence deduce a novation. The findings are sufficiently broad to negative the idea of a novation. [2] To establish a novation the plaintiff must show a meeting of the minds effecting a substitution of the new party for the original party to the contract, and no meeting of minds to this effect is apparent from the evidence in this case.

[3] And we are equally unable to agree with plaintiff that there was an equitable assignment of the contract binding upon the defendant. It is contended in this behalf that Pettit & Wilson in effect turned over the contract verbally to Emirzian and that he accepted its benefits during the year 1916, and cannot be heard to say that he was not bound to assume what are called its burdens, namely, the delivery of the 1917 crop. But the evidence must be construed as the trial court evidently understood it, namely, that Emirzian did not accept the benefits in 1916. According to his testimony, which the trial court evidently credited, he did not deliver in 1916 under the contract at all, but under his contract with Goree. This was not a voluntary acceptance of the benefits of the contract between Pettit &

Wilson and Griffin & Skelley Company, such as is necessary to support an equitable assignment. (Civ. Code. sec. 1589.)

From the foregoing considerations it is evident that the finding upon the allegation of the assignment of the contract by Griffin & Skelley to the plaintiff is in no sense material to the decision of this case. This assignment must not be confused with the equitable assignment above-mentioned. There being no contract or agreement binding Emirzian to deliver the fruit in controversy, any finding that Griffin & Skelley Company had assigned their contract with Pettit & Wilson to the plaintiff could not avail to change the result of this case.

The order granting a new trial on account of failure to find upon the allegation of the assignment of the contract by Griffin & Skelley Company to the plaintiff was, therefore, improper, and is reversed; the original judgment must be affirmed. It is so ordered.

Richards, J., and Kerrigan, J., concurred.