[Civ. No. 2379.    Third Appellate District.—December 21, 1921.]

## PRATT–LOW PRESERVING COMPANY (a Corporation), Appellant, v. C. W. EVANS, Respondent.

[1] CONTRACTS—SALE OF FRUIT CROP—TERM OF OBLIGATION—OWNER-SHIP OF LAND IMMATERIAL.—Under a contract for the sale and purchase of all the crops of fresh fruit grown, or to be grown, upon certain specific land "during the seasons of 1917 to 1928, both inclusive," the obligation of the seller to perform is not limited to the period of his ownership of the land by the mere recital in such contract that he is the owner of the land upon which the fruit is to be grown, those words being merely *descriptio personae*.

[2] ID.—PROVISION THAT COVENANTS RUN WITH LAND—EFFECT OF DISPOSITION OF LAND.—The fact that such contract provided that the covenants therein contained should run with the land did not have the effect of relieving the original covenantor from liability upon his disposition of the land.

[3] ID.—AGREEMENT THAT COVENANTS RUN WITH LAND—EFFECT OF ON SUBSEQUENT PURCHASER.—By a provision in such a contract that "It is mutually agreed, between the parties hereto that the covenants herein contained, shall ·run with the land hereinabove described, and shall bind both of the parties hereto, their heirs, administrators, executors, successors and assigns," the parties not only fail to impose a lien or burden upon the land but they also fail to charge the grantee of the land with any responsibility under said contract or to relieve his grantor from his continuing liability thereunder.

[4] ID.—BREACH—SPECIFIC PERFORMANCE AS CUMULATIVE REMEDY.—A provision in such a contract that it "may," at the instance of either of the parties thereto, be specifically enforced in any court of competent jurisdiction does not have the effect of making an action for specific performance the only remedy for a breach, but only gives the parties an optional and cumulative remedy which would not otherwise exist.

APPEAL from a judgment of the Superior Court of Stanislaus County.  J. C. Needham, Judge.  Reversed.

The facts are stated in the opinion of the court.

J. M. Walthall, Griffin, Boone & Boone and Chickering & Gregory for Appellant.

James F. Peck, R. L. McWilliams and L. J. Maddux for Respondent.

BURNETT, J.—The appeal is from a judgment in favor of defendant, rendered upon the sustaining of a demurrer to the complaint without leave to amend. The contract, for a breach of which the plaintiff sued for damages, after designating the defendant herein as the party of the first part and the plaintiff as the party of the second part and after describing defendant's land, proceeded as follows:

"That the party of the first part has sold and the party of the second part has bought, all the crop of fresh fruit grown or to be grown on the property hereinabove described, of the varieties and estimated quantities herein stated, delivered at the cannery of the party of the second part, in the city of Modesto, County of Stanislaus, during the seasons of 1917 to 1928, both inclusive, all of such fruit to be of good merchantable quality, ripe, firm, of good color, free from worms, scale or other imperfections, and in good order and condition at the time of delivery. Any soft, small or inferior fruit to be weighed back and deducted. It is to be optional with the party of the second part to take any fruit not up to specifications of this contract, at market price, and the party of the first part agrees not to sell the same to others without the knowledge and consent of the party of the second part. In case the party of the second part can not use fruit not up to specifications of this contract, same shall be held by the party of the second part subject to the order of the party of the first part, or turned over to the representative of the party of the first part, making the delivery at the point of delivery, without notice.

"If the party of the first part shall be unable to deliver fruit, owing to the destruction of crop by flood, frost or any unavoidable casualty, or if the party of the second part shall be unable to operate its cannery, at Santa Clara or Modesto, owing to railroad and labor strikes, fire or any unavoidable casualty, or inability to get supplies necessary to operate on account of railroad and labor strikes, fire or any unavoidable casualty this contract shall be null and void upon written notice by either party to the other, of inability to perform; but only for the season during which such inability shall exist.

"It is understood that the party of the first part shall till, cultivate, fertilize and irrigate the soil, prune, spray and thin trees where said fruits are grown in the manner customary and necessary to the proper care and growing of same during the full term of this contract. . . .

"It is mutually agreed, between the parties hereto that the covenants herein contained, shall run with the land hereinabove described, and shall bind both of the parties hereto, their heirs, administrators, executors, successors and assigns.

"For reasons, not herein specifically stated, the parties hereto have agreed that a breach of this agreement by either of the parties hereto can not be adequately relieved by pecuniary compensation, and that damages will not afford to either of the parties hereto, a full, complete and adequate remedy for any such breach. It is therefore covenanted and agreed that this contract may, at the instance of either of the parties hereto, be specifically enforced in any court of competent jurisdiction."

The breach of the contract is set forth in the complaint as follows: "That upon said first day of August, 1919, and at the time of said offer of plaintiff to perform and said demand by plaintiff as hereinbefore set forth and in violation of said contract, said defendant stated to plaintiff that he, the said defendant, did and would at all times refuse to make any further deliveries to plaintiff of any of the peaches referred to in said contract, and said defendant furthermore stated to plaintiff that he, the said defendant, did repudiate said entire contract and would not continue to perform said contract at any time or in any manner or at all, and said defendant furthermore stated to plaintiff that he, the said defendant, had theretofore parted with all title and ownership to and of said land and was no longer the owner thereof, and that he, the said defendant, was and would continue to be unable to perform said contract in accordance with the terms thereof or at all. That said defendant has at no time since his said refusal to perform and his said repudiation of said contract as hereinbefore set forth delivered or offered to deliver to plaintiff any of the peaches mentioned in said contract and has at no time since his said refusal to perform and his said repudiation of said contract performed any of the provisions of said contract upon his part to be performed."

In addition to the ground that the complaint failed to state a cause of action, many special grounds were presented by the demurrer, but these latter may be passed by as they could be cured easily by amendment, which the court should have allowed, if such error existed, and, besides, it is conceded that the order of the trial court was based upon the conviction that plaintiff was not entitled to any relief whatever in such action.

[1]  One serious question in the case involves the time during which said contract was to be binding upon the parties, the contention of appellant being that it was for twelve years, and of respondent that he was to deliver peaches only so long as he owned the orchard—and, therefore, that, when he sold the land, his obligation under the contract ceased.

There is no dispute as to the validity of the contract, it being conceded that it was competent for the parties to bind themselves for any period of years that they might agree upon.  Nor is there any denial that by a transfer of the property the grantor could not escape his liability unless so provided either expressly or by necessary implication in the contract, the sole question being one of construction.

In determining the intention of the parties, it is impossible to overlook the consideration that, by apt and concise terms, they expressed an absolute undertaking of sale and purchase for the term of *twelve years:* "That the party of the first part has sold and the party of the second part has bought . . . during the seasons of 1917 to 1928, both inclusive." Manifestly, effect must be given to this plain, unambiguous language, unless it be cut down or modified in some manner by some other portion of the contract.  As to this it is entirely clear that there is no *express* limitation or modification, since, at most, the specifications upon which respondent relies can operate to reduce the term only by implication.

Can any of them be so considered and construed?  To the first of these, the recital that the defendant is the owner of the land upon which the peaches are to be grown, we attach no significance.  It is to be observed that the contract does not provide that the parties are to be bound *while* defendant is the owner of the land.  If they had intended to so limit it, the way was easy and obvious.  The words were simply used as *descriptio personae* and have no more pertinency than if, as suggested by appellant, defendant

had described himself as a single man or as a resident of Modesto. If such had been the designation, he would hardly contend that he could escape his obligation under the contract by getting married or by moving to some other city.

Thus far we think nothing appears that limits the undertaking of defendant to a sale of the peaches only so long as he owned the orchard. Appellant calls attention to the fact that the cases cited by respondent in this connection do not deal with the violation of *express* provisions, but the obligation was sought to be *extended, not terminated,* by implication. Thus in *Hamlyn & Co.* v. *Wood & Co.,* [1891] L. R. 2 Q. B. Div. 488, the defendant (Wood & Co.) agreed to sell all the grains made *by Wood & Co.* They made no grains and would not be liable unless it should be held that it was *implied* that they would not dispose of their business. Herein, the defendant's provision was to sell and deliver all the peaches to be grown on the property for twelve years, not merely such as might be grown *by him.* The defendant had the legal right to sell the orchard in the meantime, but he would not thereby affect his obligation for the twelve-year period.

So in *La Rue* v. *Groezinger,* 84 Cal. 281 [18 Am. St. Rep. 179, 24 Pac. 42]: "One Hopper agreed to sell all the grapes which *he* might raise during a period of ten years from the vines which were then growing, or which *he* might thereafter plant in a certain vineyard," and the principal question discussed was whether this agreement was assignable by Hopper.

[2] Another circumstance, deemed of great importance by respondent, is that the contract provided that said covenant should run with the land. But it does not follow from such provision that the parties intended that the original covenantor should be relieved from his liability. This very question was determined by the court in *California Packing Corp.* v. *Grove,* 51 Cal. App. 253 [196 Pac. 891], wherein a hearing was denied by the supreme court. In that case the corresponding provision was: "It is mutually agreed between the seller and the buyer that the covenants herein contained shall run with the land herein described, and shall bind both parties, hereto, their heirs, executors, administrators and assigns." It was held that no covenant running with the land was thereby created and that Grove was not ab-

solved from liability, the court saying: "We are of the
opinion that respondent Grove is bound, for the twofold rea-
son that no covenant running with the land absolves him and
carries the burden over to his grantee and the parties have
not used apt words in other respects either to relieve him
or to shift the burden to another." Therein the action was
brought to recover damages for the failure by Grove to de-
liver a peach crop in accordance with the terms of a
written contract entered into by him and plaintiff's as-
signor, and the lower court sustained a demurrer to the
complaint. The judgment in favor of Grove was reversed
and the trial court was directed to overrule his demurrer.

[3] By said provision the parties herein not only failed
to impose a lien or burden upon the land, but they failed
also to charge the grantee with any responsibility under
said contract or to relieve respondent from his continuing
liability. (*California Packing Corp.* v. *Grove, supra; Cali-
fornia Packing Corp.* v. *Emirzian,* 45 Cal. App. 236 [187
Pac. 77].) Indeed, if we concede that the effect of said pro-
vision was to terminate the liability of respondent, then it
follows that appellant has no redress at all.

But if it may be said that, as between appellant and re-
spondent, said provision should be considered as though cre-
ating a covenant running with the land, then the general
rule would apply that the original covenantor continues
to be bound after the sale. (*Coburn* v. *Goodall,* 72 Cal. 498
[1 Am. St. Rep. 75, 14 Pac. 190]; *Stanislaus Water Co.* v.
*Bachman,* 152 Cal. 716 [15 L. R. A. (N. S.) 359, 93 Pac.
858]; 15 Corpus Juris, p. 1301; Code Commissioners' note
to section 1457, Civil Code.)

But whether any effect can be given to said provision it
is at least plain that the parties did not therein use language
that is susceptible of the construction that the defendant's
obligation was to cease upon the transfer. It may be, as
suggested by respondent, that after the sale it would be diffi-
cult for him to supply the peaches, but he should have
anticipated that difficulty and made provision for it in the
contract. That by his sale he has, indeed, made it difficult
or even impossible to carry out his agreement is no defense
to the action. (*Klauber* v. *San Diego Street-Car Co.,* 95
Cal. 353 [30 Pac. 555].)

The cases cited by respondent are not, as we regard them, inconsistent with this view. In *Worthington* v. *Hewes,* 19 Ohio St. 66, and *Hickey* v. *Lake Shore R. Co.,* 51 Ohio St. 40 [46 Am. St. Rep. 545, 23 L. R. A. 396, 36 N. E. 672], for instance, the obligation was to continue in perpetuity, and it constituted a covenant running with the land. These were the circumstances that led the court to the conclusion that the parties did not intend the personal obligation to continue. We may quote from the former as follows: ''We are bound to conclude that the lessor intended to trust to the land and its owner, and not to the lessee, for his security. He could not have expected the lessee to live forever, or even for ninety-nine years; and the latter could not have intended to make provisions so far in the future. . . . No prudent man would make a lease running forever, unless he were willing to trust to the land alone.''

*Table Mountain etc. Water Co.* v. *Chavanne,* 70 Cal. 616 [11 Pac. 678], is more nearly in point. Therein, however, the contract recited that the water was to be used in running a certain mill and it recognized the right of the owner to sell said mill. The parties necessarily understood that if he sold the mill he would have no further use for the water and the contract therefore clearly implied that such contingency would terminate his obligation. It is also to be observed that the supreme court attached importance to the fact that the parties themselves had so construed the contract.

We can see nothing in section 1655 of the Civil Code that aids respondent in his contention. Therein it is provided that, ''Stipulations which are necessary to make a contract reasonable, or conformable to usage, are implied, in respect to matters concerning which the contract manifests no contrary intention.'' It cannot be said that the construction for which appellant contends is *unreasonable*. It is, indeed, a matter of common knowledge that such contracts for a definite term of years are quite common and, hence, it would be fair to conclude that they are reasonable for both parties. Moreover, since the parties have *expressly agreed* that the contract should continue for the term of twelve years, they have manifested an intention contrary to the implication that respondent would invoke.

[4] Respondent's other main point is that plaintiff's only remedy for a breach is an action for specific performance. But here, again, it must be said that it is not so expressly provided in the contract. If such is to be the holding, it must be by reason of implication.   It is significant, however, that the parties have used the term *may,* instead of *shall* or *must,* and ordinarily this word implies *permission,* and not a *mandate.*   If the parties had intended to make it exclusive, it would have been a simple task to so provide.   Upon the theory that they intended the remedy by specific performance to be *cumulative* and not *exclusive* it is easy to understand why they mentioned that remedy and not the other; for generally specific performance would not be allowed in such instances, and the parties believed that the ordinary action would not afford ''a full, complete and adequate remedy,'' but there was no reason for mentioning the other, which would necessarily be available for a breach of the contract.   But if they had intended to exclude the common-law action, it is reasonable to suppose that they would have adopted apt language to effectuate it.   In *Feeney & Bremer Co.* v. *Stone,* 89 Or. 360 [171 Pac. 569], the rule is stated as follows: ''Generally speaking, the parties to a contract for the sale of personal property have a right to agree that a defined remedy shall be exclusive, but in the absence of language evidencing an intention to make a given remedy, like the one in question here, exclusive of all others, it is treated as cumulative and permissive rather than exclusive and mandatory.''

As illustrative of instances wherein similar language has been regarded as authorizing an optional and cumulative remedy appellant cites: *Hefner* v. *Haynes,* 89 Iowa, 616 [57 N. W. 421]; *Cook* v. *Lantz,* 116 Ill. App. 472; *Love* v. *Ross,* 89 Iowa, 400 [56 N. W. 528]; *Loisseau* v. *Gates,* 31 S. D. 227 [Ann. Cas. 1915D, 1157, 140 N. W. 258]; *Mandel* v. *Buttles,* 21 Minn. 391.

As stated in this last case, it is difficult to see ''why a stipulation that a party *may have* a remedy not given by law should be held to deprive him of one clearly given by law in the absence of any agreement to that effect.''

Respondent cites certain cases from other jurisdictions which he claims sustain his view, but an examination will

show a marked difference between those cases and this. In *Goss* v. *Northern Pacific Hospital Assn.*, 50 Wash. 236 [96 Pac. 1078], the language was "shall be extended."

In *Ancrum* v. *Camden Co.*, 82 S. C. 284 [21 L. R. A. (N. S.) 1029, 64 S. E. 151], the question was not of remedy but of liability, and it was held that since the parties had stipulated in the contract what the consequences should be of a breach of the agreement, they were not to be held beyond that.

In *McCready* v. *Lindenborn*, 172 N. Y. 400 [65 N. E. 208], the parties by their contract provided "for the consequences of a breach" and laid down a rule to "admeasure the damages" and agreed when they were to be paid, and the court properly held that such remedy must be exclusively followed. In that case it is to be observed that the obligation contained the words "shall and will pay."

The question involved in *Stuart* v. *Pennis*, 91 Va. 688 [22 S. E. 509], and *St. Regis Paper Co.* v. *Santa Clara Lumber Co.*, 173 N. Y. 149 [65 N. E. 967], was whether an action for specific performance would lie, and in neither was any doubt expressed that an action for damages might have been brought.

But if it should be thought that the parties intended to make said remedy mandatory and exclusive, it would be unreasonable to suppose that they contemplated such to be the case after that remedy had ceased to be available. Having sold the property, respondent could not be compelled to specifically perform. Upon the theory, therefore, that the contract was to continue in force for twelve years, if respondent's position as to the exclusive character of the remedy can be maintained, then after the sale of the land appellant would be without any remedy for the breach of the contract, a condition which it is hardly to be supposed the parties contemplated.

It may be that it was unwise for respondent to bind himself for so long a period, but we are, of course, not concerned with that. If he desired to be released upon a sale of the premises, he should have so provided. He did indeed stipulate that both parties should be released from their obligations upon certain contingencies as above set forth: "If

the party of the first part shall be unable to deliver fruit,'' etc.  The implication would follow, under the familiar rule, that no other condition would affect the absolute promise to sell for the term of twelve years.

We can understand how difficult it may be for appellant to prove any future damage; the evidence may be uncertain even as to the extent, if any, that detriment has been suffered, but we think the complaint warrants an opportunity to offer proof of its claim.

The judgment is reversed.

Hart, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 21, 1922, and the following opinion then rendered thereon:

THE COURT.—We find nothing in respondent's petition for a rehearing to affect the views we expressed in our opinion in this case.  The points made herein were contained in the former briefs and received our careful attention.  Of course, we agree with petitioner in the statement of the familiar rule that all parts of a contract should be considered in the effort to arrive at the intention of the parties. We had and have no desire to ignore this fundamental rule; but, manifestly, it is impossible to appraise the cumulative effect of all the provisions of the contract without considering those provisions severally.  We are satisfied that, construing the contract according to the natural import of the terms used by the parties, no other conclusion can be reached than the one heretofore announced by us.  As to the form of the judgment, there may be some question as to whether it should not specifically direct the lower court to overrule the demurrer and permit defendant to answer.

The petition for rehearing is, therefore, denied and the judgment heretofore entered is modified so as to read as follows: ''The judgment is reversed, with directions to the lower court to overrule the demurrer and permit defendant to answer.''

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 16, 1922.

All the Justices concurred.

Lennon, J., was absent and Richards, J., *pro tem.,* was acting.