<em>Petition denied.</em>

WILLIAM R. PROCTOR *vs.* UNION COAL COMPANY.

Worcester.    November 27, 1922. — January 5, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Contract*, Validity, Construction, Performance and breach.  *Damages*, In contract.
    *Evidence*, Competency.  *Practice, Civil*, Charge to jury.

The owner of a farm on the shore of a great pond, who was engaged in the retail milk business and for fifteen years had obtained ice which he needed in the form of rental of land let by him to successive dealers in ice procured from the pond, sold a strip of land bordering on the pond to a corporation which then had held it as lessee for five years and, as part of the consideration, the corporation in writing granted to him "the right and privilege of access across said land to the said company's ice houses on the shore of" the pond "and the privilege of taking therefrom such broken ice as" the milk dealer "may need for his own use in any manner or for any purpose of his own, it being understood that the privilege so granted does not allow the" milk dealer "to take ice for the purpose of selling or giving it away."  The agreement further provided, "at such time or times as" the milk dealer "may need ice for his own necessary purposes and when there may be no broken ice to be had, the said" milk dealer "may have other ice.  It is understood and agreed that all ice taken by the" milk dealer "hereunder shall be taken from the premises by him and that the said company will deliver no ice at any other point than at said ice houses.  The privilege herein granted shall extend to the said" milk dealer, giving his name, "only and shall continue for and during the term of his natural life and shall not be assignable to any other person."  *Held*, that

(1) Such a contract for life was valid and enforceable;

(2) The corporation did not in express terms promise to cut and store any ice; but such co-operation was essential to carry out the agreement, and was implied therein;

(3) The contract could not be terminated by a change in ownership of the real estate conveyed to the corporation;

(4) Upon a conveyance of the real estate by the corporation, by which act it deprived itself of the means of supplying ice in accordance with its contract to the plaintiff's prejudice, it became responsible in damages.

In an action by the milk dealer against the corporation for damages resulting from a failure of the corporation to perform the contract above described after it had conveyed the land to another, it was proper for the trial judge to rule, that

"this contract required the defendant to furnish the plaintiff with ice for the rest of his life unless contingencies over which the defendant had no control and for which it could not be said to be at fault prevented."

At the trial of the action above described, it was proper for the judge to instruct the jury to allow a reasonable amount for the plaintiff's expenditure for ice from the time when the breach of agreement took place to the time of the trial; and, as to future damages, to determine how long the plaintiff probably would live; the average annual cost of obtaining a supply of ice for the purposes defined in the agreement; and then to award him "such sum which, invested reasonably, will yield an annual income during his life sufficient to furnish ice for his own use and for any other purpose except for sale or giving away, leaving no money at his death."

Evidence was properly admitted at the trial above described, of what the plaintiff expended in procuring ice after the defendant refused further to supply him, and the use of such evidence properly was limited in the charge.

CONTRACT for breach of the contract in writing, described in the opinion, relative to supplying the plaintiff with ice during his lifetime. Writ dated October 18, 1920.

In the Superior Court, the action was tried before *Burns,* J. Material evidence is described in the opinion. At the close of the plaintiff's evidence, the defendant rested and moved that a verdict be ordered in its favor. The motion was denied. The defendant then asked for the following rulings: .

"1. On all the evidence the plaintiff is not entitled to recover.

"2. Under the circumstances and on the facts of this case nominal damages only are recoverable.

"3. The right of the plaintiff to ice was a revocable license.

"4. Under the terms of the memorandum of agreement dated March 31, 1913, the plaintiff did not have an absolute right as against the defendant to ice.

"5. The defendant in this case did not guarantee that the plaintiff would be able to get ice from the premises in question at any and all times.

"6. The defendant in this case did not agree to furnish ice to the plaintiff or do any other act.

"7. Under the terms of said memorandum the defendant would not be liable for the happening of any or all of the following contingencies: a. Failure of the ice crop due to adverse weather conditions. b. The destruction of harvested ice and the ice houses by fire. c. Discontinuance by the defendant of the harvesting of ice. d. Discontinuance by the defendant of its ice business.

e. Discontinuance by the defendant of the use of its ice houses. f. Increase of the plaintiff's legitimate demands for ice under said memorandum beyond the supply available.  g. The sale by the defendant of the land and ice in question.

"8. Under the said memorandum the defendant took the chance as to the happening of any of the above mentioned contingencies."  .

"10. The plaintiff is entitled to recover a sum not greater than the difference between the value of the land which he sold to the defendant and the amount of money received by him as a part of the consideration therefor.

"11. The plaintiff is entitled to recover a sum equal to the difference between the value of the land which he sold to the defendant and the amount of money received by him as a part of the consideration therefor, minus the portion of said sum equivalent to the proportion which the period from the date of said memorandum (March 31, 1919) to the date of the breach alleged in this case bears to said period plus the plaintiff's expectancy of life.

"12. The damages due to the loss of a right, subject to contingencies are not as great as the damages due to the loss of the same right not subject to contingencies.

"13. In determining the value of the plaintiff's right to ice under the written memorandum of agreement in this case the jury must consider all possible contingencies, the happening of which would end said right or reduce its value without liability therefor on the part of the defendant.

"14. The sale of the land by the defendant to Greene was not a violation of any right of the plaintiff under said memorandum or otherwise.

"15. The phrase 'During the term of his natural life' as used in said memorandum defines the length of time during which the plaintiff's rights thereunder should continue, but said phrase did not enlarge said rights."

"17. The plaintiff's right of access to Whalom Lake was not cut off nor in any way affected by the sale of the premises in question by the defendant to Greene."

The rulings were refused.  The jury found for the plaintiff in the sum of $2,230; and the defendant alleged exceptions.

The case was submitted on briefs.

*G. K. Hudson, R. W. Robbins & G. M. Barrows,* for the defendant.
*J. A. Stiles,* for the plaintiff.

DE COURCY, J.   The plaintiff is engaged in the retail milk business and owns a farm on the shore of Whalom Lake, a great pond situated in Lunenburg.   In 1897 he leased a portion thereof to one Stone for the purpose of cutting and storing ice, the lessee agreeing, as part of the consideration, to furnish Proctor with the ice he should require for the use of his family and in his milk business.   Stone later assigned the lease to the defendant, the Union Coal Company, which carried on the business of selling ice.   Later the plaintiff and defendant agreed to an extension of the lease for a term of ten years from December 6, 1907.   Some modification apparently was made in its terms, but the instrument is not printed in the record.   On March 31, 1913, the plaintiff sold to the defendant a lot of land, including that described in the lease. The consideration was $1,500 in cash, and an agreement about the ice which is the subject matter of this controversy.   For about five years thereafter the plaintiff received the ice thereunder; but in 1918 the defendant leased to one Greene.   In 1918 and 1919 the plaintiff hired a part of Greene's ice house and stored some ice which was cut by the defendant's employees.   In January, 1920, the defendant sold the land to Greene, and conveyed it by a deed which made no reference to the plaintiff's rights to ice; and since that time the plaintiff has obtained no ice under said agreement. This action was brought for breach of the contract, and the jury returned a verdict for the plaintiff.

By said agreement the plaintiff was granted "the right and privilege of access across said land to the said company's ice houses on the shore of Whalom Lake, and the privilege of taking therefrom such broken ice as the said Proctor may need for his own use in any manner or for any purpose of his own, it being understood that the privilege so granted does not allow the said Proctor to take ice for the purpose of selling or giving it away."   It further provided: "at such time or times as said Proctor may need ice for his own necessary purposes and when there may be no broken ice to be had, the said Proctor may have other ice.   It is understood and agreed that all ice taken by the said Proctor hereunder shall be taken from the premises by him and that the said company will deliver no ice at any other point than at said ice houses.   The

privilege herein granted shall extend to the said William R. Proctor, Jr., only and shall continue for and during the term of his natural life and shall not be assignable to any other person."

The main issue between the parties is that of the true interpretation of the contract, and the rights of the plaintiff thereunder. He needed substantially half a ton of ice a day in his milk business. He had obtained it as part of the rental of this land for about fifteen years, — the last five from the defendant as lessee. When he parted with his land in 1913, he expected to continue in the milk business, and undertook to provide for ice as theretofore. Presumably the defendant then expected to carry on the ice business indefinitely. It voluntarily and expressly bound itself to let the plaintiff take ice from its ice houses for and during the term of his life. Such a contract for life is enforceable. *St. John* v. *St. John*, 223 Mass. 137. *Pierce* v. *Tennessee Coal, Iron & Railroad Co.* 173 U. S. 1.

It is the contention of the defendant that the rights of the plaintiff under the agreement were to terminate on the happening of any contingency causing either the non-existence of a sufficient supply of broken and harvested ice at the defendant's ice houses, or a change in the ownership of the realty in question. A discussion of the first would be merely academic, as no such contingency arose or was contemplated. The defendant did not in express terms promise to cut and store any ice; but such cooperation was essential to carry out the agreement, and was implied therein. The construction that the defendant could terminate the plaintiff's rights at any time by a sale of the premises, would leave the plaintiff wholly at the mercy of the company. It is not to be presumed that the parties intended so unreasonable an agreement, in the absence of language expressing such intention. *Carnig* v. *Carr*, 167 Mass. 544. *Gillet* v. *Bank of America*, 160 N. Y. 549. Undoubtedly the defendant had a legal right to sell the land and ice houses. But if it exercised that right, and thereby deprived itself of the means of supplying ice in accordance with its contract, to the plaintiff's prejudice, it became responsible in damages. *Whitmarsh* v. *Walker*, 1 Met. 313. *Rowe* v. *Peabody*, 207 Mass. 226. *John Soley & Sons, Inc.* v. *Jones*, 208 Mass. 561. The trial court was right in ruling that "this contract required the defendant to furnish the plaintiff with ice for the rest of his

life unless contingencies over which the defendant had no control and for which it could not be said to be at fault prevented."

On the issue of damages, the judge instructed the jury to allow a reasonable amount for the plaintiff's expenditure for ice from the time when the breach of agreement took place to the time of trial. In awarding future damages he charged them to determine how long the plaintiff probably would live; the average annual cost of obtaining a supply of ice for the purposes defined in the agreement; and then to award him "such sum which invested reasonably, will yield an annual income during his life sufficient to furnish ice for his own use and for any other purpose except for sale or giving away, leaving no money at his death." A tabulation showing the sum as computed, applicable for different ages, was submitted to them, and explained by the court. We find no error in this manner of determining the value of the plaintiff's right under the contract. *Paro* v. *St. Martin*, 180 Mass. 29. *Freeman* v. *Fogg*, 82 Maine, 408.

What has been said disposes of the defendant's requests for rulings, so far as material. The use of the evidence of what he expended in procuring ice after the defendant's refusal to supply him, was properly limited in the charge. The objection that the price paid by the plaintiff to Harris and to Greene for ice in 1920–1921 included seller's profits and cost of hauling, was not raised at the trial, where this minor detail could have been dealt with. As no error is shown in the conduct of the trial the entry must be

*Exceptions overruled.*