DECISION.
{¶ 1} Plaintiff-appellant, M.G.A., Inc., dba Movie Gallery, filed a complaint for breach of contract against defendants-appellees, Amelia Station, Ltd. ("Amelia Station"), and Relco Resources, Inc., fka Regal Quad, Inc. ("Regal"). Appellees filed counterclaims asking the court to declare the rights and liabilities of the parties under the contract. The trial court granted appellees' motion for summary judgment, and M.G.A. has filed a timely appeal. We reverse the trial court's judgment.
{¶ 2} Regal was the owner of the Amelia Thriftway Shopping Center, in which Movie Gallery leased space pursuant to a lease agreement and accompanying rider.
{¶ 3} The rider to the lease between the lessor, Regal, and the lessee, M.G.A., stated,
 3.During the term of this Lease, Lessor agrees that it shall not lease any portion of the Shopping Center to any tenant whose primary business is a video store operation.
 4. * * * In addition, Lessor agrees that it will not sell any portion of the Shopping Center, including any outparcels, to any party intending, to the Lessor's actual knowledge, to operate a video store business. In the event that any such portion of the Shopping Center or outparcel is subsequently used for the operation of a video store business, the Lessee shall have the right, within Ninety (90) days after the commencement of said use, to terminate this Lease and immediately surrender the Demised Premises to the Lessor.
 Regal subsequently sold the shopping center to Amelia Station, which also acquired several outparcels in the vicinity of the shopping center. After Amelia Station sold one of those outparcels with actual knowledge that the purchaser intended to operate a video store on the property, M.G.A. filed its action for breach of contract.
{¶ 4} Before we begin our analysis of M.G.A.'s assignment of error, we note that Regal and Amelia Station are collectively represented by counsel on appeal and that they argue their positions together. Though Regal filed a cross-claim for indemnity against Amelia Station in which it alleged that, at the time of the sale, it had assigned all of its rights to Amelia Station, the trial court never ruled on that cross-claim. Instead it certified that there was "no just reason for delay" pursuant to Civ.R. 54(B) so that its judgment would be a final, appealable order. Consequently, we make no ruling on that issue, and we treat Regal and Amelia Station collectively as appellees.
{¶ 5} In its sole assignment of error, M.G.A. contends that the trial court erred in granting appellees' motion for summary judgment. It argues that appellees breached the unambiguous language of the contract, that the language of paragraph four of the lease did not limit M.G.A.'s remedy to termination of the lease, and that it was entitled to sue for damages for breach of the lease. This assignment of error is well taken.
{¶ 6} The interpretation of a written instrument is, in the first instance, a matter of law for the court. If it is clear and unambiguous, the court need not concern itself with rules of construction or go beyond the plain language of the agreement to determine the rights and obligations of the parties. Instead, the court must give effect to the contractual language. Aultman Hosp. Assn. v. Community Mut. Ins. Co.
(1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920; Serengetti ConstructionCo. v. Cincinnati (1988), 51 Ohio App.3d 1, 4, 553 N.E.2d 1371. If, however, the provisions of a contract are ambiguous and the meaning of a material term is not apparent from the four corners of the contract, an issue of fact exists, making summary judgment inappropriate. InlandRefuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc. (1984),15 Ohio St.3d 321, 322, 474 N.E.2d 271; Crowninshield/Old Town Comm.Urban Redev. Corp. v. Campeon Roofing Waterproofing, Inc. (1998),129 Ohio App.3d 819, 823, 719 N.E.2d 89.
{¶ 7} In the construction of a written instrument, a court's primary objective is to ascertain and give effect to the parties' intent, which can be found in the language they chose to employ. The court will give common words and phrases their ordinary meaning unless the totality of the contract reveals a contrary intent. Foster Wheeler Enviresponse,Inc. v. Franklin Cty. Convention Facilities Auth. (1997),78 Ohio St.3d 353, 361, 678 N.E.2d 519; Crowninshield, supra, at 823, 719 N.E.2d 89. The writing will be read as a whole, and the intent of each part will be gathered from a consideration of the whole. FosterWheeler, supra, at 361, 678 N.E.2d 519.
{¶ 8} Appellees argue that they did not breach the contract, an argument we find to be without merit. The contract states, "Lessor agrees that it will not sell any portion of the Shopping Center, including any outparcels, to any party intending, to the Lessor's actual knowledge, to operate a video store business." This language is clear and unambiguous. Appellees acknowledged that they had sold an outparcel to a purchaser that they knew planned to operate a video store on the property. Though they are correct in their assertion that we must look at the contract as a whole, the restrictive language's position in the contract does not vitiate its clear import. Applying that language to the undisputed facts, we hold that appellees breached the contract.
{¶ 9} The question then becomes whether, under the language of the contract, M.G.A. could sue for damages or whether it was limited to the remedy of termination of the lease. We find little Ohio law on this issue. The Chapter on Sales in the Ohio Uniform Commercial Code states that a sales contract may limit the remedies available to a buyer. R.C.1302.93(A)(1). However, "[r]esort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy." R.C. 1302.93(A)(2).
{¶ 10} Ohio courts have also declared that limitation-of-remedy clauses with an exclusivity provision in warranty cases under Ohio's version of the Uniform Commercial Code are invalid when circumstances cause the remedy to fail of its essential purpose. Goddard v. GeneralMotors Corp. (1979), 60 Ohio St.2d 41, 45-48, 396 N.E.2d 761; OhioSavings Bank v. H.L. Vokes Co (1989), 54 Ohio App.3d 68, 74,560 N.E.2d 1328; Wilson v. Kelly Energy Systems, Inc. (Oct. 7, 1992), 1st Dist. Nos. C-910589 and C-910510. The Ohio Supreme Court has also noted that while courts have upheld some contractual language as an adequate expression of the seller's intent to limit the buyer's remedies, the Uniform Commercial Code disfavors limitation of remedies and a presumption arises that a limiting clause provides a cumulative remedy rather than an exclusive one, unless it clearly states otherwise.Goddard, supra, at 44-45, 396 N.E.2d 761; Ohio Savings Bank, supra, at 74, 560 N.E.2d 1328; Cincinnati Ins. Co. v. Quikcrete Companies (Sept. 17, 1996), 10th Dist. No. 96APE04-424.
{¶ 11} M.G.A. has cited to us the only Ohio case we can find involving general contract law with facts similar to the present case. InForest Park Partners Ltd. Partnership v. Ponderosa, Inc. (1996), 2nd Dist. No. 15688, the landlord and tenant entered into a lease agreement that contained a limitation-of-remedies clause. It provided that "[in] the event Tenant ceases operating its said business at the Demised Premises for a nine (9) month period, Landlord may give notice to Tenant that Landlord is electing to terminate this Lease." It went on to state that if the tenant did not engage in certain actions within a specified time period, "Landlord shall have the right to terminate the Lease by giving a second notice * * *."
{¶ 12} When the tenant closed its business on the leased premises, the landlord filed an action for breach of contract, seeking damages, injunctions requiring the tenant to continue its operations on the leased premises, and specific performance of the lease provisions. The trial court essentially granted summary judgment in favor of the tenant on the basis that the lease provided for the exclusive remedy of termination of the lease.
{¶ 13} In reversing the trial court's decision, the court of appeals stated,
 As we read this lease amendment, however, it specified one
remedy the landlord's option to terminate the lease if the tenant ceased to operate its business but it did not necessarily exclude other possible remedies. Stated another way, the fact that the lease amendment specified that a particular remedy was available did not, without more, necessarily preclude the parties from pursuing other remedies.
 The landlord also presented the affidavit of one of its general partners stating that when the lease was negotiated, termination of the lease was only one of the landlord's options should the tenant cease to operate its business. The court went on to hold that the affidavit, considered together with the lease amendment language, which did not clearly preclude the parties form pursuing other remedies, was sufficient to demonstrate that the tenant was not entitled to judgment as a matter of law and that the trial court should have taken parol evidence on that issue.
{¶ 14} Some courts in other jurisdictions have taken the position, like the Uniform Commercial Code, that a party may pursue any remedy allowed by law unless the contract expressly declares a remedy to be exclusive. Eschenbacher v. Anderson (2001), 306 Mont. 321, 332,34 P.3d 87; White v Jewett (1938), 106 Mont. 416, 78 P.2d 85. Others have stated that the parties must demonstrate in the contractual language a clear intent to make the remedy exclusive. Maytag Co. v. Alward
(1962), 253 Iowa 455, 461-462, 112 N.W.2d 654; Massachusetts Indem. Life Ins. Co. v. Dresser (1973), 269 Md. 364, 368-370, 306 A.2d 213;Nelson v. Spence (1960), 182 Cal.App.2d 493, 497-498, 6 Cal.Rptr. 312;Pratt-Low Preserving Co. v. Evans (1922), 55 Cal.App. 724, 731,204 P.2d 241. Others have held that whether the parties intended to make the remedy exclusive presents an issue of fact. In re Hale Desk Co.
(C.A.2, 1938), 97 F.2d 372, 373; Commercial Credit Co. v. Insular MotorCorp. (C.A.1, 1927), 17 F.2d 896, 898-899.
 Whether the particular clause relied upon as setting forth the exclusive remedy is to be so interpreted, depends not only upon the language and literal meaning of the words in that clause, for those may be subject to more than one interpretation, but upon the intent of the parties revealed by the instrument as a whole, the background of the contract when executed, the conduct of the parties, and the nature of the subject-matter involved. * * *
 Hunt v. Detroit Sulphite Pulp Paper Co.
(W.D.N.Y. 1936), 15 F. Supp. 698, 701. See, also, Annotation, Contractual Provision as to Remedy as Excluding Other Possible Remedies (1962), 84 A.L.R.2d 322.
{¶ 15} While we find no clear consensus on the issue, we agree with the approach that the issue should be determined like any issue in a contract case, by determining the parties' intent. Nevertheless, limitations-of-remedies clauses are not favored and the parties' intent to make the specified remedy exclusive must be clear from all the facts and circumstances of the case.
{¶ 16} In this case, as in Forest Park Partners, supra, the language in the contract is far from clear that termination of the lease was M.G.A's exclusive remedy for breach of the contract. We find the contractual language to be ambiguous. Accordingly, an issue of fact exists as to whether the parties intended for termination of the lease to be the exclusive remedy. Appellees failed to meet their burden to show that they were entitled to judgment as a matter of law, and, therefore, the trial court erred in granting their motion for summary judgment. SeeHarless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66,375 N.E.2d 46; Stinespring v. Natorp Garden Stores, Inc. (1998),127 Ohio App.3d 213, 215-216, 711 N.E.2d 1104. Accordingly, we sustain M.G.A's assignment of error, reverse the trial court's judgment, and remand this case for further proceedings.
Judgment reversed and cause remanded.
Winkler, J., concurs.
Gorman, J., concurs separately.