OHIO SAVINGS BANK, F.K.A. OHIO SAVINGS ASSOCIATION, APPELLANT, *v.* H. L. VOKES COMPANY ET AL.; TRANE COMPANY, APPELLEE.

(No. 53391—Decided January 3, 1989.)

*Roy E. Lachman,* for appellant.
*David A. Schaefer,* for appellee.

NAHRA, C.J. Ohio Savings Bank is appealing the directed verdict rendered against it in favor of the Trane Company.

This case involves a seventy-five-ton rooftop air-conditioning unit manufactured by the Trane Company, sold to the Hattenbach Company and installed in the newly constructed, three-story Ohio Savings Bank Building in Rocky River. When alleged prob-

lems arose regarding the installation and performance of the air-conditioning unit, the owner of the building, Ohio Savings Bank, brought suit against the following parties: H. L. Vokes Company, the general contractor, now bankrupt and subsequently dismissed as a party; Hattenbach, which contracted to design and install the air-conditioning system; Evans & Associates, the engineering firm hired by Hattenbach to design the heating, ventilating and air-conditioning system; George Evans, a consulting engineer (and, at the time of trial, President of Evans); Drake Construction Company, the entity responsible for the tenant suites and installation of the ducts; and Trane, the manufacturer and supplier of the air-conditioning unit. Ohio Savings sued for breach of contract, breach of express and implied warranties, negligence, strict liability, and willful misrepresentations and failure to disclose. Prior to trial, Ohio Savings dismissed George Evans individually and entered into settlements with all the remaining defendants except Trane. Trane moved for summary judgment, which motion was denied, and the case was transferred to a visiting judge.

On the morning of trial the court granted Trane's motion to exclude evidence of consequential damages pursuant to Trane's warranty. At the close of Ohio Savings' case, Trane moved for a directed verdict contending that (1) Trane had no contract with Ohio Savings; (2) if Ohio Savings is considered to be a third-party beneficiary, Trane's warranty contains a disclaimer and limitation of remedies provision to preclude recovery on contractual warranty claims; (3) there was no evidence of negligence since the

design specifications were prepared after the unit was selected and, furthermore, there can be no recovery in Ohio on a negligence claim for economic loss only; (4) strict tort liability is inapplicable since there was no evidence that Trane's unit was unreasonably dangerous; and (5) there was no evidence of fraud. After counsel's arguments and the court's deliberation, the court directed a verdict for Trane on each cause of action for the reasons stated by Trane's attorney. Ohio Savings timely appealed.

I

Ohio Savings' first assigned error is that:

"The trial court erred in excluding evidence of Trane's fraudulent misrepresentation, nondisclosure and concealment, and resulting damage."

During trial the court precluded Ohio Savings from presenting evidence relating to its fraud claim. In particular, the court sustained objections to questions regarding (1) what Trane's representative Robert Wolff told Evans's engineers, (2) what Evans's engineers relied on in determining the specifications for the cooling system, and (3) what consequential damages were suffered.[1] Trane argues that this evidence was properly excluded because (1) its warranty limited damages and excluded statements of warranty other than those within the written document, (2) Ohio Savings waived any right to a fraud claim since it did not promptly notify it after discovering the alleged fraud, (3) the parol evidence rule barred admission of this testimony, and (4) there was no contract between it and Ohio Savings, thereby precluding any reliance on it by Ohio Savings. The first issue to

---

[1] Several objections throughout this trial were properly sustained on grounds of hearsay, lack of a proper foundation, or repetitiveness, *inter alia,* and, therefore, our discussion is not directed to the evidence properly excluded.

decide is whether a cause of action for fraud may be maintained in addition to a cause of action pursuant to the Ohio Uniform Commercial Code ("UCC"). If so, Trane's warranty disclaimer and limitation of remedies are of no effect.

The UCC was not enacted to eliminate all common-law causes of action other than a UCC cause of action. Principles of law and equity, including common-law fraud, supplement the provisions of the UCC governing transactions in goods "[u]nless displaced by * * * particular provisions of [the UCC] * * *." R.C. 1301.03. No provisions of the UCC have displaced actions for fraud.[2] See, generally, 1 White & Summers, Uniform Commercial Code (3 Ed. 1988) 19-20. In fact, unlike the exclusive remedy provisions of the old Uniform Sales Code, see *Saberton* v. *Greenwald* (1946), 146 Ohio St. 414, 32 O.O. 454, 66 N.E. 2d 224, the UCC provides that remedies for fraud include those remedies available under the UCC sales provisions without making them exclusive. R.C. 1302.95. Accordingly, we hold that a cause of action for fraud is maintainable in addition to a UCC cause of action. A plaintiff bringing an action for fraud is therefore not limited by the UCC provisions governing warranties, warranty disclaimers and limitations of remedies, but is entitled to seek all damages incurred as a result of the fraud. The trial court, therefore, wrongfully precluded Ohio Savings from presenting evidence of a possible fraud claim against Trane.

None of the remaining arguments advanced by Trane operates to bar Ohio Savings' fraud claim as a matter of law. The parol evidence rule will not bar the admission of oral representations made to induce one to enter into a contract in an action for fraud. *Walters* v. *First Natl. Bank of Newark* (1982), 69 Ohio St. 2d 677, 681, 23 O.O. 3d 547, 550, 433 N.E. 2d 608, 611; *Finomore* v. *Epstein* (1984), 18 Ohio App. 3d 88, 89, 18 OBR 403, 404, 481 N.E. 2d 1193, 1195. Therefore, the representations of Trane's salesman relied upon by the purchaser are admissible. Privity is not required to assert a claim of fraud. *Haddon View Investment Co.* v. *Coopers & Lybrand* (1982), 70 Ohio St. 2d 154, 158, 24 O.O. 3d 268, 271, 436 N.E. 2d 212, 215. Finally, a claim for fraud does not accrue until the wrongdoer and the fraud are discovered. *Burr* v. *Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St. 3d 69, 76, 23 OBR 201, 206, 491 N.E. 2d 1101, 1105. Although Ohio Savings acknowledged cooling problems early on, Ohio Savings' evidence indicates that the alleged wrongdoer was not discovered until June 1984. Ohio Savings notified Trane sometime before meeting with Wolff in November, learned of the alleged misrepresentation at the November meeting, and commenced suit on June 26, 1985, well within the four-year statute of limitations. Ohio Savings has not waived its fraud claim under these circumstances.

The trial court thus erred in excluding evidence pertinent to Ohio Savings' cause of action for fraud. Accordingly, this assignment of error is sustained.

## II

Ohio Savings' second assigned error is that:

"The trial court erred in excluding evidence of Trane's breach of contract and warranties, and resulting damages."

---

[2] Policy arguments, however, have prevailed in other jurisdictions to disallow a cause of action for fraud between commercial parties. See, *e.g., Unifoil Corp.* v. *Cheque Printers & Encoders Ltd.* (D.N.J. 1985), 622 F. Supp. 268, 270-271.

## A. *Contract*

Ohio Savings contends the court erred in excluding evidence of the contracts between the various parties involved in constructing the bank building. It is well established that a contract is binding only upon the parties to the contract and those in privity with them and that an action for breach of contract can be maintained only by the parties to the contract or those deriving rights from the contracting parties. *Cincinnati, Hamilton & Dayton R.R. Co.* v. *Bank* (1896), 54 Ohio St. 60, 42 N.E. 700; *Evans* v. *Warwick* (1969), 20 Ohio Misc. 217, 221, 49 O.O. 2d 78, 80, 252 N.E. 2d 328, 331; see *United States Fid. & Guar. Co.* v. *Truck & Concrete Equipment Co.* (1970), 21 Ohio St. 2d 244, 50 O.O. 2d 480, 257 N.E. 2d 380, paragraph one of the syllabus (contractual relationship necessary to maintain UCC action for breach of implied warranty of merchantability based upon sales contract). Therefore, in order for Ohio Savings to maintain a contract action against Trane, it was necessary for Ohio Savings, which had no contract with Trane, to establish its status as a third-party beneficiary of Hattenbach's and Trane's contract for the air-conditioning unit. Evidence relating to this issue should not have been excluded.

The exclusion in this case, however, appears to be harmless since Ohio Savings was able to establish its status as a third-party beneficiary with other admitted evidence, specifically Plaintiff's Exhibit 4, where Trane's submittal data to Hattenbach, dated January 10, 1980, lists the projects as "Ohio Savings." It is clear that Hattenbach purchased the Trane unit and Trane supplied its unit for Ohio Savings' benefit.

## B. *Warranty*

As a third-party beneficiary, however, Ohio Savings acquires no greater rights than those set forth in the contract between Hattenbach and Trane. See *Union Savings & Loan Co.* v. *Cook* (1933), 127 Ohio St. 26, 186 N.E. 728, paragraph one of the syllabus. For purposes of UCC analysis, both Trane and Hattenbach are "merchants" — Trane because it deals in goods of this kind and Hattenbach because it held itself out as having knowledge or skill peculiar to the goods involved and because it employed engineers having the requisite knowledge concerning air-conditioning capacities and the design of HVAC systems. See R.C. 1302.01(A)(5). Ohio Savings, therefore, acquires no greater rights than the merchant-purchaser Hattenbach.

### 1. *Express Warranty*

Ohio Savings contends the court erred in excluding evidence of Trane's representations concerning the unit's capacity. The court did exclude testimony regarding the alleged computer duct analysis and what Wolff told Evans's engineers about the unit's capacity. However, Trane's submittal data, Plaintiff's Exhibit 4, which contained Trane's representation as to its unit's capacity, was not excluded. An express warranty is created in part as follows:

"(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

"(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." R.C. 1302.26(A).

Trane's description of its unit amounted to an express warranty regarding the unit's cooling capacity. Moreover, Ohio Savings' evidence indicated that Hattenbach ordered the "Trane Rooftop Equipment Per Evans

Co. Plans & Specs," and Evans's specifications, dated January 1980, indicated 27,000 c.f.m. at 3.67 s.p.[3] Technical specifications and blueprints if made part of the basis of the bargain are express warranties as to the description of the goods. R.C. 1302.26, Official Comment 5. Ohio Savings' position is that it did not receive what Hattenbach bargained for based on Trane's description of its goods.

Trane argues that it effectively disclaimed any express warranties other than those appearing in its five-year warranty on the unit's compressor, which was purchased by Hattenbach and which included Trane's standard one-year warranty on the balance of the unit. Trane's five-year warranty provided in part that "[t]his warranty is in lieu of all other warranties, expressed or implied, including implied warranties of merchantability and fitness for particular use." Trane's standard one-year warranty provided in part that "[t]he warranty and liability set forth in this paragraph are in lieu of all other warranties and liabilities, expressed or implied, in law or in fact, including implied warranties of merchantability and fitness for particular use."

Disclaimers of warranties are "used to control the seller's liability by reducing .the number of situations in which the seller can be in breach. * * *" 1 White & Summers, *supra,* at 606. The UCC provides for the exclusion or modification of an express warranty as follows:

"Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of section 1302.05 of the Revised Code on parol or extrinsic evidence, negation or limitation is inoperative to the extent that such construction is unreasonable." R.C. 1302.29 (A).

Consequently, express warranties are difficult to disclaim since they usually go to the essence of the bargain and form the basis of the agreement between the parties. R.C. 1302.26, Official Comments 1 and 4; White & Summers, *supra,* at 562-564; see *Society Natl. Bank* v. *Pemberton* (1979), 63 Ohio Misc. 26, 29, 17 O.O. 3d 342, 345, 409 N.E. 2d 1073, 1075, affirmed, (June 25, 1980), Summit App. No. 9502, unreported. Trane's description of its unit and its unit's capacity as presented and as proffered by Ohio Savings certainly formed the basis of the agreement between Trane and Hattenbach. Hattenbach agreed to purchase a particular Trane unit per Evans's specifications. According to Ohio Savings' evidence, Evans's specifications for the air-conditioning unit were drawn up relying on Trane's description of its goods. Because Trane's description of its unit and its cooling capacity formed the basis for the purchase of this particular unit, Trane's description of its unit cannot be found to be reasonably consistent with a negation of this same description. Trane's disclaimer of express warranties regarding the description of its unit is therefore ineffective.

The parol evidence rule does not bar the admission of Trane's oral warranties regarding its unit. The UCC parol evidence rule provides:

"Terms with respect to which the confirmatory memoranda of the par-

___

[3] Although Trane has denied receiving these specifications, this court does not make credibility determinations in directed verdict cases and in fact must construe the evidence presented in a light most favor-able to the non-moving party. Civ. R. 50(A)(4); *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 284, 21 O.O. 3d 177, 179, 423 N.E. 2d 467, 469.

ties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:

"(A) by course of dealing or usage of trade as provided in section 1301.11 of the Revised Code or by a course of performance as provided in section 1302.11 of the Revised Code; and

"(B) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement." R.C. 1302.05; see, generally, *Camargo Cadillac Co.* v. *Garfield Enterprises, Inc.* (1982), 3 Ohio App. 3d 435, 3 OBR 514, 445 N.E. 2d 1141. This rule protects the seller "against false allegations of oral warranties * * *." R.C. 1302.29, Official Comment 2. In this case, the written agreement between the parties includes Hattenbach's purchase order referencing Evans's specifications. The purchase order was incomplete since it did not contain the engineers' actual specifications. Therefore, evidence regarding the engineers' specifications and how they were compiled, which would constitute additional terms of the contract, should have been admitted to explain or supplement the contract between the parties.

### 2. *Implied Warranties*

#### a. *Merchantability*

When a seller is a merchant with respect to subject goods, a warranty of merchantability is implied in the sales contract as a matter of law unless it is excluded. R.C. 1302.27(A). Liability based on an implied warranty of merchantability may be disclaimed with language mentioning "merchantability" and, if in writing, with language mentioning "merchantability" conspicuously. R.C. 1302.29(B); *Allis-Chalmers Credit Corp.* v. *Herbolt* (1984), 17 Ohio App. 3d 230, 17 OBR 496, 479 N.E. 2d 293. Language is conspicuous "if it is in larger or other contrasting type * * *." R.C. 1301.01(J); *Insurance Co. of North America* v. *Automatic Sprinkler Corp.* (1981), 67 Ohio St. 2d 91, 95-96, 21 O.O. 3d 58, 61, 423 N.E. 2d 151, 155; *Avenell* v. *Westinghouse Elec. Corp.* (1974), 41 Ohio App. 2d 150, 70 O.O. 2d 316, 324 N.E. 2d 583. In this case, the implied warranty of merchantability was effectively disclaimed by the words at the bottom of both Trane warranties since they appeared in contrasting solid capital letters and contained the word "merchantability" in the disclaiming language.

The statute of frauds defense raised by Ohio Savings does not affect the viability of Trane's disclaimer since the contract between Hattenbach and Trane satisfied the requirements for contracts between merchants. See R.C. 1302.04 and 1302.07. Nor will the unconscionability provisions of the UCC contained in R.C. 1302.15 affect the parties' contract. The parties to this contract are merchants, and this court is reluctant to apply unconscionability principles in a commercial setting to warranty disclaimers. See White & Summers, *supra,* at 609. Moreover, Hattenbach specifically purchased the extended warranty in this case and Trane's disclaimer of implied warranties fully complied with R.C. 1302.29. Consequently, Ohio Savings cannot maintain a claim of liability against Trane based on the implied warranty of merchantability.

#### b. *Fitness for Particular Purpose*

The warranty of fitness for a particular purpose is implied in a contract for the sale of goods "[w]here the

seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods * * * unless excluded * * *." R.C. 1302.28. To be excluded, the disclaiming language must be written and conspicuous, but the disclaiming language need not specifically mention the words "fitness for particular purpose." R.C. 1302.29(B). Trane's disclaimer of any implied warranty of fitness for a particular purpose fully complies with the provisions of R.C. 1302.29(B), governing exclusions. It is in writing and is conspicuous in all capital letters. As indicated in our discussion of the implied warranty of merchantability, any statute of frauds defense or unconscionability arguments are inapplicable. Accordingly, Ohio Savings cannot maintain a claim of liability against Trane based on the implied warranty of fitness for particular purpose.

### c. *Damages*

Ohio Savings contends that the trial court wrongfully excluded evidence of its damages, which included costs of repair and maintenance of the unit and system, excessive electricity costs, cost of funds, rent strike by tenants, loss of tenant goodwill, vacancy, reconfiguration costs of entire system, engineering expense, etc. Trane argues that the exclusion was proper because the limitation-of-remedy provisions in its warranty effectively precluded any recovery of consequential damages.

Damages recoverable may be limited or altered such as "by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts * * *." R.C. 1302.93(A)(1); see R.C. 1302.29(D). However, "resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy." R.C. 1302.93(A)(2). It is presumed, therefore, that limiting clauses provide cumulative remedies unless it is clearly stated otherwise. *Goddard* v. *General Motors Corp.* (1979), 60 Ohio St. 2d 41, 44, 14 O.O. 3d 203, 205, 396 N.E. 2d 761, 763; R.C. 1302.93, Official Comment 2.

Trane relies on the following language from its standard one-year warranty to preclude consequential damages:

"The Trane Company's obligations and liabilities under this warranty are *limited* to furnishing f.o.b. shipping point, freight allowed to buyer's city (or port of export for shipments outside the coterminous United States) replacement equipment (or at the option of The Trane Company parts therefor) for all Trane products not conforming to this warranty and which have been returned to the manufacturer. In no event shall The Trane Company be obligated to pay for the cost of lost refrigerant. No liability whatever shall attach to The Trane Company until said products have been paid for and then said *liability shall be limited to the purchase price.*" (Emphasis added.)

This language is sufficiently explicit to restrict the remedies available to Ohio Savings to those stipulated in the warranty. This limitation does not fail of its essential purpose since it does not deprive Ohio Savings of the substantial value of its bargain. Cf. *Goddard* v. *General Motors, supra.* Trane has provided in its remedies limitation clause to replace equipment or refund a purchase price if its unit does not have the capacities and ratings as warranted. Consequently, insofar as this evidence of damages related to Ohio Savings' claims for breach of express or implied warranties, the court properly excluded it. Ac-

cordingly, this assignment of error is overruled.

### III

Ohio Savings' third assigned error is that "[t]he trial court erred in excluding evidence of strict liability, and damages pertaining thereto."

Ohio Savings contends the trial court wrongfully excluded evidence of the air-conditioning unit's defective and unsafe nature as well as resulting damages. Trane argues that as a matter of law the doctrine of strict liability should not be applied in a commercial situation for the recovery of economic loss.

As Ohio Savings has established, Ohio Savings is the third-party beneficiary to the contract between Hattenbach and Trane. See our disposition of Ohio Savings' second assignment of error, *supra.* As such, Ohio Savings acquires Hattenbach's rights to enforce the contract as established between Hattenbach and Trane and as set forth in the terms of the contract. No greater rights are acquired. In Ohio, where commercial parties are in privity of contract, the doctrine of strict liability, for what in essence is a breach of warranty contract action, is unavailable for the recovery of purely economic loss. *Avenell* v. *Westinghouse Elec. Corp., supra;* see *Cincinnati Gas & Elec. Co.* v. *General Elec. Co.* (S.D. Ohio 1986), 656 F. Supp. 49, 56-60; *Fireman's Fund Ins. Co.* v. *Clark Equipment Co.* (Aug. 14, 1986), Cuyahoga App. No. 50372, unreported (strict liability viable absent contractual remedies); see, generally, *East River Steamship Corp.* v. *Trans-*

*america Delaval, Inc.* (1986), 476 U.S. 858 (neither negligence nor strict liability causes of action available in admiralty to recoup economic injury only); *Spring Motors Distributors, Inc.* v. *Ford Motor Co.* (1985), 98 N.J. 555, 489 A. 2d 660 (commercial buyer seeking economic loss damages from immediate seller and remote supplier may maintain UCC breach of warranty action but not strict liability or negligence action, and buyer need not establish privity to maintain such warranty action).[4] As a third-party beneficiary of the contract between Hattenbach and Trane, therefore, Ohio Savings as a matter of law cannot maintain a strict liability action against Trane for economic losses, but is restricted to the terms of the Hattenbach-Trane contract and the applicable provisions of the UCC governing the transaction.

Moreover, even if a strict liability claim were permitted, Ohio Savings has failed to present or proffer evidence that Trane's unit was "defective" as that term is defined in strict liability cases. See, *e.g., State Farm Fire & Cas. Co.* v. *Chrysler Corp.* (1988), 37 Ohio St. 3d 1, 523 N.E. 2d 489 (unsafe and/or dangerous criteria).

Accordingly, this assignment of error is overruled.

### IV

Ohio Savings' fourth assigned error is:

"The trial court erred in excluding evidence of Trane's negligence and failure to warn, and resulting damage."

Ohio Savings contends that Trane

---

[4] According to *East River Steamship* and *Spring Motors, supra,* the majority of jurisdictions restrict commercial buyers to UCC causes of action for economic damages. As discussed in the many cases cited, the policy considerations underlying the evolution of strict liability principles are not present when dealing with economic losses between commercial parties. Nor should the intent of the legislatures in enacting statutes to govern commercial transactions be circumvented and displaced by judicially declared tort principles.

failed to exercise due care in performing its obligations and that evidence of Trane's negligence, failure to warn and resulting damages should have been admitted. Trane maintains that as a matter of law a purchaser of an allegedly defective product cannot assert a negligence claim against the manufacturer for economic loss regardless of whether privity of contract exists between the purchaser and manufacturer.

In *Inglis* v. *American Motors Corp.* (1965), 3 Ohio St. 2d 132, 32 O.O. 2d 136, 209 N.E. 2d 583, the Supreme Court of Ohio held that "[i]n an action involving product liability based on negligence against the manufacturer of the product by a buyer of the product not in privity of contract with the manufacturer, there is no liability for pecuniary loss of bargain." *Id.* at paragraph one of the syllabus. Later, this court refused to carve an exception for claimed additional losses, such as costs of repair or consequential damages, since these damages were, in essence, damages resulting from the loss of the bargain itself. *Fireman's Fund Ins. Co.* v. *Clark Equipment Co., supra;* see, also, *East River Steamship Corp., supra,* at 868-871. The losses claimed by Ohio Savings stem from the allegedly defective air-conditioning unit, *i.e.,* the decreased value of Hattenbach's bargain with Trane, and, consequently, are not recoverable in a negligence action.

Ohio Savings argues that the rule in *Inglis* has been changed following the decision in *Haddon View Investment Co.* v. *Coopers & Lybrand, supra,* wherein monetary losses resulting from an accountant's negligence were recoverable by members of a limited relying class. *Haddon View,* however, has not overruled *Inglis. Inglis* is a products liability and breach of warranty case involving an allegedly defective good, whereas *Haddon View* is a professional malpractice case involving allegedly substantial accounting services.

Moreover, tort principles and remedies are simply inapplicable to the instant case. A tort is defined as "* * * [a] legal wrong committed upon the person or property independent of contract. * * *" Black's Law Dictionary (5 Ed. 1979) 1335. The Supreme Court of New Jersey, in denying a negligence cause of action to a commercial buyer seeking damages for economic loss resulting from the purchase of defective goods, explained that:

"* * * The purpose of a tort duty of care is to protect society's interest in freedom from harm, *i.e.,* the duty arises from policy considerations formed without reference to any agreement between the parties. A contractual duty, by comparison, arises from society's interest in the performance of promises. Generally speaking, tort principles, such as negligence, are better suited for resolving claims involving unanticipated physical injury, particularly those arising out of an accident. Contract principles, on the other hand, are generally more appropriate for determining claims for consequential damage that the parties have, or could have, addressed in their agreement.

"* * *

"Nonetheless, the weight of authority supports the proposition that economic expectations that are protected by the U.C.C. are not entitled to supplemental protection by negligence principles. * * *" (Citations omitted.) *Spring Motors, supra,* at 579-581, 489 A. 2d at 672-673.

No independence of contract exists in this case. Trane's duties or obligations with respect to its product were set forth in its agreement with Hattenbach and/or governed by the UCC. The allegations of negligence herein are

derived from the contract between Trane and Hattenbach and cannot be established without reference to the terms of the agreement. The breach of any duty, therefore, is nothing more than a breach of the contract between Trane and Hattenbach for the purchase of the air-conditioning unit. See *Cincinnati Gas & Elec. Co., supra,* at 60-61. The UCC adequately governs the rights and remedies of the litigating parties. Accordingly, this assignment of error is overruled.

## V

Ohio Savings' last assigned error is that "[t]he court erred in directing a verdict in favor of defendant Trane."

Ohio Savings contends that even with the limited evidence admitted at trial, a directed verdict on all claims was improper because there were issues of fact for the jury to decide.

The court's verdict for Trane was proper with respect to Ohio Savings' claims of strict liability, negligence and breach of any implied warranties for the reasons discussed in Ohio Savings' second, third and fourth assignments of error. With respect to Ohio Savings' claims of fraud and breach of express warranty, the court improperly excluded evidence and therefore improperly directed a verdict. Accordingly, this assignment of error is overruled in part and sustained in part.

The judgment of the trial court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. Ohio Savings is entitled to a new trial on its claims of fraud and breach of express warranty. Evidence of consequential damages may be offered on the fraud claim only.

*Judgment accordingly.*

ANN MCMANAMON and PATTON, JJ., concur.