945 F.2d 408
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ARIAS/ROOT ENGINEERING d/b/a AR, Incorporated, Plaintiff-Appellant,
v.
CINCINNATI MILACRON MARKETING COMPANY, Defendant-Appellee.
 No. 90-55661.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 6, 1991.
Decided Sept. 25, 1991.
 
 1
 Before FLETCHER and CANBY, Circuit Judges, and McNICHOLS,* Chief District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Plaintiff Arias/Root Engineering d/b/a AR, Inc. ("AR") appeals the district court's order granting partial summary judgment in favor of defendant Cincinnati Milacron Marketing Co. ("CM") on AR's claims for breach of warranties. The district court held that contractual provisions limiting AR's remedies and excluding consequential damages barred recovery of any remedy other than a refund of the price of the machinery AR had purchased from CM. Because AR has presented a genuine issue of material fact as to whether the limited remedy failed of its essential purpose, we reverse and remand for trial.
 
 FACTS
 
 4
 AR is a California corporation that manufactures and sells engine blocks, heads, and intake manifolds for use in high-performance racing engines. In 1986, AR decided to purchase a machining center to machine engine blocks. It contacted CM, an Ohio corporation that manufactures and sells machining centers. A salesman from CM, after visiting AR's shop and reviewing AR's needs, recommended that the T-10 horizontal machining center would meet AR's requirements and could operate 24 hours a day, seven days a week, automatically. Based on this recommendation and CM's other representations concerning the tolerances that the T-10 would hold during operation, AR decided to purchase the T-10. The purchase price was $365,017.36.
 
 
 5
 The parties executed a "Sale and Security Agreement" incorporating CM's standardized form, "Terms and Conditions of Sale, Domestic." Among the terms and conditions was the following limitation of remedies:
 
 
 6
 LIMITATION OF REMEDIES AND LIABILITIES: Buyer agrees that our liability and Buyer's sole and exclusive remedy pursuant to any claim of any kind, including but not limited to a claim in contract, negligence or strict liability, against us or any of our affiliates, shall be (a) the repair or replacement at our option of defective products or parts thereof ..., or (b) a refund of the price allocable to the defective product or part thereof ... if we are unable to effectively repair, replace or correct such defect in a reasonable time after using our best efforts....
 
 
 7
 UNDER NO CIRCUMSTANCES SHALL WE OR ANY AFFILIATE OF OURS HAVE ANY LIABILITY WHATSOEVER FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES, such as, but not limited to, loss of profit or revenue; loss of use of the product ...; cost of capital; [or] cost of replacement equipment....
 
 
 8
 Agreement p 5 [ER at 11] We read the clause as including both a limitation of remedies and a disclaimer of consequential damages.
 
 
 9
 The T-10 was installed in AR's shop in March 1986, and from that time forward it failed to perform in accordance with CM's representations and AR's expectations. The T-10 failed to operate automatically, to hold tolerances, and to machine parts to AR's specifications. CM made repeated efforts to repair the T-10's numerous deficiencies, but those efforts proved unsuccessful. In February 1987, Alan Root, AR's president, wrote to CM and requested a replacement machining center, but CM continued its attempts to repair the T-10. In August 1987, Root met with CM representatives and asked that CM either provide AR with a suitable replacement machining center or refund AR's money. CM offered to sell AR a T-20 horizontal machining center (a machine similar to but larger than the T-10), representing that the T-20 would accomplish what the T-10 had failed to accomplish. In October 1987, AR issued a purchase order for the T-20 that expressly incorporated the prior terms and conditions.
 
 
 10
 In April 1988, one month before the T-20 was delivered to AR, CM offered to cancel the order and refund the amounts AR had paid on the T-10. Already having waited six months for delivery of the T-20 and financially unable to wait the additional six months necessary to obtain a machining center from another source, AR declined the refund offer. In October 1988, five months after the T-20 was delivered, the parties executed another "Sale and Security Agreement," which incorporated the same terms and conditions as those in the prior agreement and provided for a purchase price of $474,736.90, with AR "trading in" the T-10 for credit equal to the money it had paid toward the T-10.
 
 
 11
 From the time it was delivered, the T-20 exhibited deficiencies similar to those of the T-10, and from June 1988 through the fall of 1989, CM tried repeatedly and unsuccessfully to remedy the deficiencies. Finally, on October 20, 1989, AR filed the present action, alleging breach of express warranty (Count I), breach of implied warranty of merchantability (Count II), breach of implied warranty of fitness for a particular purpose (Count III), and fraudulent misrepresentation (Count IV). CM moved for partial summary judgment. On April 20, 1990, the district court entered judgment for CM on Count I in conjunction with CM's agreement to refund AR's payments on the T-20. The court also entered judgment in favor of CM on Counts II and III, but stayed Count IV pending disposition of this appeal. AR timely appealed the district court's judgment concerning Count I. We have jurisdiction over the appeal from the district court's order of partial summary judgment entered pursuant to Fed.R.Civ.P. 54(b). See 28 U.S.C. § 1291.
 
 DISCUSSION
 
 12
 We review an order granting summary judgment de novo. Milgard Tempering, Inc. v. Selas Corp. of America [Milgard I], 761 F.2d 553, 555 (9th Cir.1985). Summary judgment is proper only if the evidence, viewed in the light most favorable to the non-moving party, raises no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id. The district court's interpretation of Ohio law, which the parties agree governs this diversity action, is reviewed de novo. Salve Regina College v. Russell, 111 S.Ct. 1217 (1991).
 
 
 13
 This dispute is governed by Article 2 of the Uniform Commercial Code as it has been adopted and interpreted by Ohio. The relevant provision, which governs limitation of remedies, is Ohio Rev.Code Ann. § 1302.93 (UCC § 2-719). Section 1302.93(A) authorizes parties to provide for exclusive and limited remedies in their agreements, subject to subsections (B) and (C):
 
 
 14
 (B) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in [the U.C.C. chapters of the Ohio] Revised Code.
 
 
 15
 (C) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable....
 
 
 16
 This appeal turns on whether the contractual remedy failed of its essential purposes and on what consequences follow from any such failure.[1] AR challenges the district court's rulings that, first, as a matter of law the limited remedy did not "fail of its essential purpose" under section 1302.93(B) and, second, even if the limited remedy could have failed of its essential purpose, the consequential damages disclaimer would survive.
 
 I. Failure of Essential Purpose
 
 17
 AR's central argument is that there exists a genuine issue of material fact as to whether the remedies limitation failed of its essential purpose. Section 1302.93(B) does not define what it means by the phrase, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose." However, Official Comment 1 to that section, after explaining that the section leaves parties free to shape, modify, and limit remedies, notes that "it is of the very essence of a sales contract that at least minimum adequate remedies be available." Comment 1 also states that under section 1302.93(B), "where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article." The district court held that the remedies limitation could not have failed of its essential purpose because the refund remedy--a backup to the front-line remedy of repair or replacement--was always available and minimally adequate. AR counters that a refund remedy can fail of its essential purpose if the seller does not offer it within a reasonable time.
 
 
 18
 Two decisions of the Ohio Supreme Court offer substantial support for AR's position. In Goddard v. General Motors Corp., 396 N.E.2d 761, 60 Ohio St.2d 41 (1979), the court considered a limited remedy provision in a warranty issued with the sale of an automobile. The buyer, having experienced a multitude of problems with the car, ultimately brought an action for damages against General Motors, which defended with an exclusive remedies clause that the court interpreted "to limit the buyer's remedy to repair and replacement of defective parts." 396 N.E.2d at 764. In considering whether the limited remedy had failed of its essential purpose, the court first noted that "when a seller is unable to fulfill its warranted obligation to effectively repair or replace defects ..., the buyer is deprived of the benefits of the limited remedy and it therefore fails its essential purpose." Id. The court then discussed several cases holding that the essential purpose of such a limited remedy is to ensure that the buyer receive a conforming product within a reasonable period of time; if a seller fails to cure defects within a reasonable period of time, the limited remedy fails of that purpose. Because the car purchased by Goddard was "riddled with defects," requiring constant trips to the shop for repairs, the court found that the remedy had failed of its essential purpose, and Goddard was freed to seek all available remedies. Id. at 765.
 
 
 19
 In the second case, Chemtrol Adhesives, Inc. v. American Manufacturers Mutual Insurance Co., 537 N.E.2d 624, 42 Ohio St.3d 40 (1989), the buyer of a sophisticated piece of machinery that had failed to perform properly brought suit against its insurers, who then brought a third-party claim against the manufacturer. The sale agreement contained a provision limiting the manufacturer's liability to the cost of repair or replacement, and the insurers argued that the remedy had failed of its essential purpose. The court stated that repair or replacement remedies "generally fail only where the seller is unable or unwilling to make repairs within a reasonable time." 537 N.E.2d at 639. The court also noted that the question of whether a remedy has failed "is ordinarily a question of fact for the jury." Id. Ultimately, however, the court rejected the insurer's argument because there was no evidence that the manufacturer "was unable or unwilling to repair and/or replace the defective system within a reasonable time." Id.
 
 
 20
 Goddard and Chemtrol establish that under Ohio law a limited remedy can fail of its essential purpose if it is not provided in a reasonable time and that the question of whether a remedy has failed is a factual one. If the limited remedy in the case before us were the traditional repair-or-replace remedy, there clearly would exist a genuine issue of material fact as to whether CM was unable to cure the defects within a reasonable time. A period of more than three years elapsed while CM attempted repairs on the T-10, replaced it with the T-20, and then attempted ultimately unsuccessful repairs on the T-20, leaving AR with a machining center that did not conform to its requirements. See Milgard Tempering, Inc. v. Selas Corp. of America [Milgard II], 902 F.2d 703, 708 (9th Cir.1990) (repair or replace remedy failed where furnace "never lived up to specifications" and successful improvements that were made took nearly three years) (applying Washington law); S.M. Wilson & Co. v. Smith Int'l, Inc., 587 F.2d 1363, 1375 (9th Cir.1978) (limited remedy failed where seller was unable to repair machine) (applying California law).
 
 
 21
 The exclusive remedy in the agreement between CM and AR, however, has an additional element: CM added a backup remedy entitling AR to a refund "if we are unable to effectively repair, replace or correct such defect in a reasonable time after using our best efforts." Agreement p 5 [ER at 11] CM argues that the existence of this backup remedy, which is always available, distinguishes the present case from Goddard and Chemtrol. In support, CM cites Ohio Savings Bank v. H.L. Vokes Co., 560 N.E.2d 1328, 54 Ohio App.3d 68 (Ohio Ct.App.1989), in which a bank had purchased a rooftop air-conditioning unit for its building, and, following numerous problems with the unit's installation and performance, brought suit against the seller. The warranty of Trane, the manufacturer of the unit, provided that its obligations were limited to replacement and that its liability was limited to the purchase price. Upholding the validity of this provision, the court stated, in full:
 
 
 22
 This limitation does not fail of its essential purpose since it does not deprive Ohio Savings of the substantial value of its bargain. Cf. Goddard v. General Motors, supra. Trane has provided in its remedies limitation clause to replace equipment or refund a purchase price if its unit does not have the capacities and ratings as warranted.
 
 
 23
 560 N.E.2d at 1335.
 
 
 24
 The somewhat conclusory discussion in Ohio Savings Bank indicates that a refund remedy does not fail of its essential purpose as long as the buyer is not deprived of "the substantial value of its bargain." While the court held the refund remedy adequate in Ohio Savings Bank, the case does not hold that a refund remedy always provides the buyer with the substantial value of its bargain or a minimally adequate remedy, regardless of when it is tendered. A seller who does not provide a refund within a reasonable period of time effectively could deprive the buyer of both a minimally adequate remedy and the substantial value of its bargain. The essential purpose of a refund remedy does not differ from the essential purpose of a remedy that provides for either refund or replacement. Both are intended to ensure that the buyer will receive a conforming product within a reasonable time, whether the seller repairs the nonconforming product, replaces it, or refunds the purchase price so that the buyer can obtain a conforming product elsewhere. A remedies limitation comprised of any one or all three of these remedies could "because of circumstances" deprive the buyer of "the substantial value of the bargain." Ohio Rev.Code Ann. § 1302.93 Comment 1.
 
 
 25
 Several cases from other jurisdictions support the view that a backup refund remedy can fail of its essential purpose under certain circumstances. For example, in Ritchie Enterprises v. Honeywell Bull, Inc., 730 F.Supp. 1041 (D.Kan.1990) (applying Massachusetts law), the court addressed on summary judgment a remedies limitation providing for "a backup remedy of actual damages not to exceed the purchase price if [the seller], after repeated attempts, is unable to repair the defective part." Id. at 1049. The court explained that the failure of the "front-line remedy" of repair would not necessarily lead to the failure of the backup remedy, but noted that the backup refund remedy still could fail of its own essential purpose:
 
 
 26
 For example, the seller may refuse to refund the purchase price after failure of the front-line repair-or-replacement remedy. Or the seller might conceal facts regarding the breach of warranty until such time that rescission by the buyer could not be pursued as a backup remedy because it would cause severe financial strain.
 
 
 27
 Id. (quoting Clark, The Law of Product Warranties, p 8.04[d] at 8-60--8-61). Because the buyer had failed to present any genuine issue of material fact in support of the arguments quoted above, the court held as a matter of law that the limitation had not failed of its essential purpose. Several other cases also support the view that under some circumstances a refund remedy can fail of its essential purpose. See, e.g., Marr Enters., Inc. v. Lewis Refrigeration Co., 556 F.2d 951, 955 (9th Cir.1977) (recognizing that latent defect or seller's failure to provide remedy within a reasonable time can lead to failure of refund remedy, but finding no evidence in support of either argument) (applying Washington law); Earl M. Jorgensen Co. v. Mark Constr., Inc., 540 P.2d 978, 985-88, 56 Haw. 466 (1975) (finding genuine issue of material fact as to whether refund remedy had failed where defects in steel plate were not detectable until buyer attempted to install plate); Leprino v. Intermountain Brick Co., 759 P.2d 835, 837 (Colo.App.1988) (holding that refund remedy failed of its essential purpose based on latent defect and seller's lax repair efforts).
 
 
 28
 We conclude that under certain circumstances a refund remedy could fail of its essential purpose.[2] Under Ohio law, a repair or replace remedy fails only where the seller is unable or unwilling to provide the remedy within a reasonable time. Chemtrol, 537 N.E.2d at 639-40. The same principle applies to the refund remedy as well. To paraphrase Chemtrol, a refund remedy will "generally fail only where the seller is unable or unwilling to [provide a refund] within a reasonable time." Id. at 639. Thus, the district court erred in holding that a refund remedy can never fail of its essential purpose.
 
 
 29
 AR argues that it has raised a jury question as to whether the refund backup remedy failed of its essential purpose in this case. Under the Chemtrol standard, AR would have to demonstrate as a matter of fact that CM was unable or unwilling to provide a refund within a reasonable amount of time. Chemtrol, 537 N.E.2d at 639-40. We agree with AR that there is a genuine issue of material fact as to whether CM was unwilling or unable to provide the backup refund remedy to AR within a reasonable time. According to the district court, it is undisputed that CM "has been unable to repair or replace the machine to Plaintiff's satisfaction, even though it has tried many times." Memorandum Opinion Granting Defendant's Motion for Partial Summary Judgment 12 (April 10, 1990). [ER at 23] Pursuant to the agreement, AR was entitled to a refund once CM had exceeded a reasonable time in which to effectuate repair or replacement. There is certainly a genuine issue of material fact as to when that reasonable period of time expired and AR became entitled to a refund.
 
 
 30
 If CM, having failed to repair or replace the machine within a reasonable time, then was unable or unwilling to provide a refund to AR within a reasonable period of time, the remedies limitation failed of its essential purpose. AR has presented a genuine issue of material fact on this issue. A reasonable jury could conclude that CM was unwilling to provide a refund within a reasonable period of time, based on its repeatedly unsuccessful repair attempts, its offer only to replace the T-10 with the T-20 when AR asked for a replacement or a refund in August 1987, and the arguably late date at which CM first made a refund offer to AR (one month before delivery was due on the T-20). AR is entitled to have a jury consider whether various circumstances--including the belatedness of the refund offer and the lag time required to obtain sophisticated machinery like the T-10 and T-20 from alternate sources--deprived AR of the substantial value of its bargain or a minimum adequate remedy.
 
 
 31
 We reverse the district court's ruling that a refund remedy can never fail of its essential purpose simply because it is always available. Under Ohio law, it is a question of fact whether a refund has "because of circumstances faile[d] in its purpose or operate[d] to deprive either party of the substantial value of the bargain." Ohio Rev.Code Ann. § 1302.93(B) Comment 1. AR has adduced sufficient evidence at the summary judgment stage to convince us that a jury should answer this question.
 
 II. Consequential Damages
 
 32
 The district court held that even if the remedies limitation failed of its essential purpose, the consequential damages disclaimer would bar AR from seeking such damages. As a matter of Ohio law, the district court's ruling was in error. In Goddard, 396 N.E.2d at 765, the Supreme Court of Ohio held that a consequential damages exclusion is not enforceable where an exclusive remedies provision has failed of its essential purpose. CM argues that the holding of Goddard has been undercut by the Ohio Supreme Court's later decision in Chemtrol.[3] We cannot agree. The court in Chemtrol did not criticize Goddard in any way; it simply noted that it did not have to reach the question of "whether the exclusion of consequential damages would remain enforceable if the repair-or-replacement remedy had failed of its essential purpose." Chemtrol, 537 N.E.2d at 640.
 
 
 33
 CM also contends that Goddard does not apply to the present case because it involved a consumer rather than a sophisticated commercial entity like AR. However, nothing in the court's opinion in Goddard indicates that its holding is limited to the consumer context. In refusing to enforce the consequential damages disclaimer, the court specifically relied upon the plain language of Ohio Rev.Code Ann. § 1302.93(B) and Comment 1. Section 1302.93(B) provides that where a limited remedy fails, "remedy may be had as provided in" the U.C.C. Comment 1 similarly states that a failed remedy "must give way to the general remedy provisions of this Article." Based on this language, the court concluded that consequential damages, which are available to a buyer under Ohio Rev.Code Ann. § 1302.89 (U.C.C. § 2-715), are always available where a remedy has failed of its essential purpose. Since neither the statutory provision nor the accompanying comment distinguishes between consumers and commercial entities, CM's attempt to distinguish Goddard is unavailing. See Matco Mach. & Tool Co. v. Cincinnati Milacron Co., 727 F.2d 777, 780 (8th Cir.1984) (applying Goddard rule in commercial context under Ohio law).
 
 
 34
 We REVERSE and REMAND for trial.
 
 
 
 *
 Honorable Robert J. McNichols, Chief United States District Judge for the Eastern District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The agreement's limited remedies clause by its terms is exclusive. No issue of unconscionability has been raised on appeal; the district court ruled that the remedies limitation and the consequential damages disclaimer were not unconscionable, and AR has not appealed that ruling
 
 
 [2]
 We recognize that several courts have found that a refund remedy did not fail of its essential purpose. See, e.g., Cole Energy Development Co. v. Ingersoll-Rand Co., 678 F.Supp. 208, 212 (C.D.Ill.1988) (applying Illinois law) (citing cases); Computerized Radiological Services, Inc. v. Syntex Corp., 595 F.Supp. 1495, 1510 (E.D.N.Y.1984) (applying California law), rev'd in part on other grounds, 786 F.2d 72 (2d Cir.1986). However, these cases do not hold that a refund remedy can never fail
 
 
 [3]
 CM also relies on County Asphalt, Inc. v. Lewis Welding & Engineering Corp., 323 F.Supp. 1300, 1308-09 (S.D.N.Y.1970), aff'd, 444 F.2d 372 (2d Cir.), cert. denied, 404 U.S. 939 (1971), which holds that a consequential damages disclaimer survives independent of the failure of an exclusive limited remedy. While County Asphalt does apply Ohio law, it predates and conflicts with Goddard. As a federal court interpreting the law of Ohio, we are bound by the decisions of the Supreme Court of Ohio. See In re Kirkland, 915 F.2d 1236, 1238 (9th Cir.1990). We note that the case upon which the district court relied applied California law. See RRX Indus., Inc. v. Lab-Con, Inc., 772 F.2d 543 (9th Cir.1985)