**MEAD CORPORATION**

v.

**STEVENS CABINETS, INC. d/b/a Stevens Industries, Inc.**

Civil Action No. 95–30015–MAP.

United States District Court, D. Massachusetts.

Sept. 19, 1996.

Michael J. Engelberg; Daniel J. Gleason, Joseph F. Shea, Jonathan Z. Pearlson, Nutter, McClennen & Fish, Boston, MA, for Mead Corporation.

Allan E. Taylor, Taylor, Anderson & Travers, Boston, MA, William W. Austin, Parker, Siemer, Austin & Resch, Effingham, IL, Jennifer Ellis Burke, Taylor, Duane, Barton & Gilman, Boston, MA, for Stevens Cabinets, Inc.

*MEMORANDUM REGARDING OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT* (Docket No. 17)

PONSOR, District Judge.

### I

The case arises out of a sales agreement between plaintiff/defendant-in-counterclaim Mead Corporation ("Mead"), an Ohio paper manufacturer, and defendant/plaintiff-in-counterclaim Stevens Cabinets, Inc. d/b/a Stevens Industries, Inc. ("Stevens"), an Illinois cabinet manufacturer. Over the course of approximately seven years, Stevens bought paper products from Mead Specialty Papers—a division of Mead, located in South Lee, Massachusetts—and incorporated the paper into its cabinetry. Over that period, Stevens typically sent to Mead an order form consisting of certain contractual terms, and Mead responded with an acknowledgment form containing certain conflicting terms, including limitation-of-action and limitation-of-liability provisions, as well as a choice-of-law clause. Stevens did not object to any of these terms.

The acknowledgment form's limitation-of-action provision reads as follows:

Any lawsuit or other action based upon breach of this contract or upon any other claim arising out of this sale (other than an action by the Seller for the purchase price) must be commenced within one year from the date of the tender of delivery by Seller or, in the case of a cause of action based upon an alleged breach of warranty, within one year from the date within the warranty period on which the defect is or should have been discovered by the buyer.

The limitation-of-liability provision provides:

IN NO EVENT SHALL SELLER BE LIABLE TO BUYER OR TO ANY PERSON PURCHASING OR ACQUIRING ANY PRODUCTS FROM BUYER FOR ANY SPECIAL, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES ARISING OUT OF, OR AS A RESULT OF, THE SALE, DELIVERY, SERVICING, USE OR LOSS OF USE OF THE PRODUCTS OR ANY PART THEREOF, OR FOR ANY CHARGES OR EXPENSES OF ANY NATURE INCURRED WITHOUT SELLER'S WRITTEN CONSENT, EVEN THOUGH SELLER MAY HAVE BEEN NEGLIGENT.

And last, the choice-of-law clause reads: "This document and the sale of any products hereunder shall be governed by and construed in accordance with the laws of the State of Ohio."

On January 12, 1995, Stevens wrote Mead demanding in excess of $600,000 for damages to its business caused by Mead's paper. On January 27, 1995, Mead brought this action against Stevens for a declaratory judgment defining the rights and responsibilities of the parties. Stevens subsequently filed two counterclaims, one alleging breach of contract or warranty and one alleging a violation of Mass.Gen.L. ch. 93A.

Mead has filed a motion for summary judgment against both of Stevens' counterclaims. In December 1995, Magistrate Judge Kenneth P. Neiman issued a Report and Recommendation that Mead's Motion for Summary Judgment be allowed as to Stevens' breach of warranty claim and denied as

to the Chapter 93A claim. *See* Report and Recommendation on Motion for Summary Judgment Brought by Plaintiff/Defendant–in–Counterclaim (D.Mass. Dec. 13, 1995) (Docket No. 37).

Mead now makes a two-part objection to the magistrate judge's recommendation that summary judgment be denied as to the Chapter 93A claim. First, it argues that the limitation-of-action provision in Mead's order acknowledgment form, which the magistrate judge found to be contractually binding against Stevens, bars untimely contract *and* tort claims, and therefore precludes a Chapter 93A count, whether grounded in contract or tort. In the alternative, Mead contends that Stevens' Chapter 93A claim actually sounds in contract, in effect duplicating its breach of warranty claim, and should therefore be dismissed under Massachusetts law. The court will address each of these arguments in turn.[1]

## II

Mead first argues that the limitation-of-action provision is effective against both contract and tort claims, and therefore bars Stevens' Chapter 93A count, whether sounding in contract or tort, as untimely. The answer requires a look at the controlling law, namely Ohio law. The magistrate judge correctly determined that, under Massachusetts choice-of-law rules, Massachusetts law governs the formation of the contract in this case. Report and Recommendation at 7–8. In Massachusetts, the party who fires the last, unchallenged shot will prevail in a contractual battle of the forms. *See Roto–Lith, Ltd. v. F.P. Bartlett & Co.*, 297 F.2d 497, 500 (1st Cir.1962); *see also* Report and Recommendation at 8–10. Here, Stevens, after receiving the acknowledgment form, did not dispute the new, contradictory terms. Thus, the acknowledgment—a final, unchallenged salvo of new terms in the agreement—reaching process—controls. The contract therefore includes Mead's action and remedy limitations, and the Ohio choice-of-law clause.

The question is whether the limitation-of-action provision applies to both contract *and* tort claims under Ohio law. Ohio's UCC provides:

An action for *breach of any contract for sale* must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year.

Ohio Rev.Code § 1302.98(A) (emphasis supplied). Thus, this section explicitly allows for an agreed-to modification of the usual four-year statute of limitations for a breach of contract claim. With respect to tort claims, however, it is silent.

Ohio decisional law generally draws a sharp distinction between contract and tort-based claims in the sales context.

Principles of law and equity, including common-law fraud, supplement the provisions of the UCC governing transactions in goods unless displaced by particular provisions of the UCC. No provisions of the UCC have displaced actions for fraud.... A plaintiff bringing an action for fraud is therefore not limited by the UCC provisions governing warranties, warranty disclaimers and limitations of remedies, but is entitled to seek all damages incurred as a result of the fraud.

*Ohio Sav. Bank v. H.L. Vokes Co.*, 54 Ohio App.3d 68, 560 N.E.2d 1328, 1331 (1989) (citations and internal quotation marks omitted).

It is not for this court, sitting in Massachusetts, to (in effect) amend the Ohio UCC, or to assume that Ohio courts would extend that statute's limitation-of-action provision to tort claims, especially where Ohio courts have so clearly drawn a line between contract and tort claims in the commercial context. Of course, as Mead's brief demonstrates, a strong argument could be made for allowing contracting businesses to agree to a reasonable limitations period for *any* claim. Commercially savvy parties on equal footing should be allowed to decide the method of

---

**1.** No objection has been offered by Stevens to Magistrate Judge Neiman's recommendation that summary judgment be granted on Mead's counterclaim for breach of warranty. Moreover,

Stevens filed no reply to Mead's objection to Magistrate Judge Neiman's denial of summary judgment on the counterclaim's Chapter 93A count.

asserting their legal rights. But any such argument is far too weak to override Ohio's interest in charting its own course in this matter. Ohio law permits parties to shorten the limitation period by agreement only for breach of contract, not tort, actions. If Stevens' Chapter 93A claim can fairly be viewed as sounding in tort, therefore, summary judgment is not warranted.

### III

In the alternative, Mead argues that the contract's limitation-of-liability and choice-of-law provisions independently bar Stevens' Chapter 93A claim because it is, in fact, contract-based. Under Massachusetts law, an agreed-to limitation of liability barring an award of damages on a breach of warranty claim, employed in a purely commercial context, is effective against a Chapter 93A claim forming merely "an alternate theory of recovery under the contract." *Canal Elec. Co. v. Westinghouse Elec. Corp.*, 406 Mass. 369, 377–79, 548 N.E.2d 182 (1990). Similarly, a choice-of-law clause selecting some state's law (other than Massachusetts') to govern "contract related" claims precludes a Chapter 93A claim when that claim essentially reduces to a contract claim. *Northeast Data Systems, Inc. v. McDonnell Douglas Computer Systems Co.*, 986 F.2d 607, 609–10 (1st Cir.1993). The common issue for both theories of preclusion is whether Stevens' Chapter 93A count duplicates its breach of warranty claim or constitutes a separate, tort-based theory of fraud. A careful look at the pleadings and supporting material permitted by Stevens reveals that the Chapter 93A count is no more than a dressed-up breach of contract or breach of warranty claim.

Significantly, the factual averments pleaded in the counterclaim are *exactly the same* for the Chapter 93A count as for the breach of contract count. According to the counterclaim, Stevens became aware of Mead's paper products through "frequent solicitations" by Mead "beginning in about 1987, if not sooner." Counterclaim ¶ 2. In about 1987, and through April 1994, Stevens sent, and Mead accepted, purchase orders for Mead's paper. *Id.* ¶ 3. Mead expressly war-

ranted that its paper would conform to Stevens' specifications and be suitable for its intended purpose. *Id.* ¶ 4. Mead allegedly induced Stevens to buy its paper through these express warranties, as well as through its advertising and sales literature. *Id.* ¶ 5. In addition, Stevens claims that it relied on Mead's skill, judgment, and representations about the manufacturing process. *Id.* ¶ 6. In light of the paper's alleged defects, Stevens concludes, Mead's product "was not of the character represented or warranted by Mead." *Id.* ¶ 8.

These conclusory averments fail to set forth a sustainable cause of action for fraud or misrepresentation in accordance with even the most liberal pleading standards, let alone in satisfaction of Fed.R.Civ.P. 9(b), which establishes heightened pleading requirements for certain disfavored claims, including fraud. Rather, Stevens' breach of warranty and Chapter 93A claims are interchangeable, relying on precisely the same facts and the same legal theory, both anchored in contract law.

In the First Circuit, Rule 9(b) requires a party pleading fraud to specify the time, place, and content of the alleged false representation. *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir.1980). Stevens has failed to specify the date or dates of Mead's alleged misrepresentations, where and how they occurred, and their content. The most one can say is that Mead made "frequent solicitations," of a type, "beginning in 1987, if not sooner," which misrepresented the appropriateness of its product for Stevens' needs. There is no reference to specific statements in Mead's "advertising and sales literature," nor even an allusion to the general character of the alleged misrepresentations. Stevens' complaint thus fails to satisfy Rule 9(b).

Given the inadequacy of its pleadings, Stevens may not now rely on eleventh-hour supporting affidavits to give life to its legal theory. In view of this case's purely commercial context, the most appropriate course is to construe Stevens' pleadings strictly. Indeed, in *Northeast Data Systems*, the court of appeals, facing the issue of whether

a choice-of-law clause precluded a Chapter 93A claim, warned trial courts to cast a wary eye on contract-based Chapter 93A claims posing as tort claims. It noted:

> [One] district court reasoned that *any* violation of Chapter 93A is a "tort" and therefore no alleged Chapter 93A violation could fall within the scope of a contractual choice-of-law provision that talks about "contracts." This reasoning, however, seems to exalt pleading form over fact-related substance. Such reasoning would undermine the parties' choice of law agreement by permitting one of them, through artful pleading, to bring what is little more than a breach of contract claim, under law that both parties have agreed would not apply.

986 F.2d at 610 (citation omitted).

As in *Northeast Data Systems,* Stevens seeks to gain an unfair advantage—here, through the artful use of affidavits to transform its pumpkin of a contract claim into 93A's coach and four. In Stevens' *complaint,* the breach of warranty and Chapter 93A claims rested on precisely the same factual foundation. Mead is correct that, on the eve of summary judgment, Stevens should not be allowed to dress up what is in essence a breach of contract claim to appear more pleasing to a tort lover's eye.

Stevens' counterclaims, being firmly rooted in contract law, are subject to all of the contract's provisions. Because the contract is governed by Ohio law, Stevens cannot assert its rights through the Massachusetts consumer protection statute.

Moreover, even if the court were to consider the affidavit of Ed J. Wiessing, Stevens' Vice President and Divisional Manager (Defendant's Ex. D to their Opposition, Docket No. 29), his averments *still* would be insufficient to make out a Chapter 93A claim. All his statements amount to is a claim that Mead promised to deliver a product conforming to Stevens' needs and failed to do so. The additional speculative assertion that Mead must have known ahead of time that the product would not conform and hid this from Stevens lacks any specific factual support. A speculative inference cannot turn an essentially contract-based claim into a tort. Properly asserted limitation-of-action provisions in contracts would be meaningless if this were permitted.

## IV

For the foregoing reasons, the court will adopt the magistrate judge's Report and Recommendation as to Count I of the counterclaim but decline to adopt it as to Count II. Mead's Motion for Summary Judgment is hereby ALLOWED as to both Stevens' breach of warranty and Chapter 93A claims in its counterclaim.